81 A.3d 57

**COMMONWEALTH of Pennsylvania, Appellant**

v.

**Ricky Lynn HANN, Deceased and Paul Weachter (Bail Bondsman), Appellee.**

Supreme Court of Pennsylvania.

Argued Nov. 27, 2012.

Decided Oct. 30, 2013.

638

640

Travis Logan Kendall, Esq., Fulton County District Attorney's Office, for Commonwealth of Pennsylvania.

Clinton T. Barkdoll, Esq., Kulla, Barkdoll, Ullman and Painter, P.C., Nicholas John Wachinski, Esq., Drexel Hill, for Paul Weachter.

Robert B. Hoffman, Esq., Eckert Seamans Cherin & Mellott, LLC, Harrisburg, for American Bail Coalition.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

## *OPINION*

Justice BAER.

This Court granted the Commonwealth's petition for allowance of appeal in this matter to determine whether the Superior Court erred in reversing a trial court's bail forfeiture order. For the reasons that follow, we vacate the order of the Superior Court and remand for proceedings consistent with this opinion.

The facts of this appeal are not in dispute. In September of 2010, Pennsylvania State Police arrested Ricky Lynn Hann for assaulting his then-girlfriend, Lisa Souders. Following an initial bail hearing, he was released on his own recognizance. Contemporaneous to Hann's arrest and release, Souders obtained a protection from abuse (PFA) order against him.

In November of 2010, police again arrested Hann and charged him with indirect criminal contempt for violating the PFA order. He was subsequently found guilty, but apparently remained free. Then, on February 19, 2011, Souders reported to State Police that the previous day Hann had kidnapped her, and kept her against her will for approximately 24 hours before she was able to escape. Based upon Souders' statement, Trooper Gary Ford filed a criminal complaint against Hann, and received and executed an arrest warrant against him. Hann was arraigned and bail was set at $100,000.

Following the arraignment, arrangements were made with Appellee, Paul Weachter, a professional and licensed bail bondsman, for bail to be posted to secure Hann's release. As

part of his agreement leading to his release, Hann agreed to the following conditions, relevant to this appeal:

1. The defendant must appear at all times required until full and final disposition of the case.

2. The defendant must obey all further orders of the bail authority.

\*     \*     \*

4. The defendant must neither do, nor cause to be done, nor permit to be done on his/her behalf, any act as proscribed by Section 4952 of the Crimes Code (relating to intimidation of witnesses or victims) or by Section 4953 (relating to retaliation against witnesses or victims), 18 Pa.C.S. §§ 4952, 4953.

5. The defendant must refrain from criminal activity.

\*     \*     \*

AOPC Form 414A1–10, Bail Bond, dated Feb. 19, 2011, *found at* Reproduced Record (R.R.) 2a. By signing the bail bond, Hann agreed to "appear at all subsequent proceedings as required and comply with all the conditions of the bail bond." *Id.*

For his part, Appellee executed a surety agreement, whereby he acknowledged that he or his heirs and assigns could be responsible for forfeiting the $100,000 bail should Hann fail to appear for a court proceeding or "comply with the conditions of the bail bond." AOPC Form 414A5–06, Surety Information Page, dated Feb. 19, 2011, *found at* R.R. 4a. Appellee also signed the bail bond. Hann was accordingly released from the Franklin County Prison.

The following day, Trooper Ford was dispatched to Souders' residence, after receiving a report that Hann had accosted Souders and taken her to a wooded area behind her house. Upon his arrival, Trooper Ford heard three gunshots from the area behind the home. Trooper Ford carefully investigated the area and discovered the bodies of Souders and Hann, each dead of apparent shotgun wounds. The county coroner would determine that Souders died of wounds to her abdomen, which

caused extensive damage to her liver, lungs, and aorta. Hann succumbed to a shotgun wound to the face. The coroner determined the manners of death of Souders and Hann to be homicide and suicide, respectively. While no inquest was held into the incident, no one disputes the causes or manners of death.

On March 1, 2011, the Commonwealth filed a petition for bail forfeiture, pursuant to Pa. R.Crim.P. 536(A)(2)(a), which provides:

> When a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority may order the cash or other security forfeited and shall state in writing or on the record the reasons for so doing.

The Commonwealth contended that, by murdering Souders and killing himself, Hann violated the above-stated conditions of his bail bond and, therefore, Appellee and his surety were subject to forfeiture of the bail. Appellee opposed the petition, citing Rule 536(A)(2)(d), which permits a forfeiture order to be "set aside or remitted if justice does not require the full enforcement" of the order.[1] Appellee cited to a three-part test, originally established by the United States District Court for the Western District of Pennsylvania and since heavily

---

1. Given that the heart of this case lies in our interpretation of Rule 536(A)(2), we note that it provides, in full, as follows:

   (a) When a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority may order the cash or other security forfeited and shall state in writing or on the record the reasons for so doing.

   (b) Written notice of the forfeiture shall be given to the defendant and any surety, either personally or by both first class and certified mail at the defendant's and the surety's last known addresses.

   (c) The forfeiture shall not be executed until 20 days after notice of the forfeiture order.

   (d) The bail authority may direct that a forfeiture be set aside or remitted if justice does not require the full enforcement of the forfeiture order.

   (e) When a magisterial district judge orders bail forfeited pursuant to this rule, the magisterial district judge shall generate a check in the amount of the bail monies he or she has on deposit in the case, and shall send the check and a copy of the docket transcript to the clerk of courts for processing and disbursement as provided by law.

utilized by the Superior Court in considering whether justice does not require full enforcement of the forfeiture order:

> When a defendant breaches a bail bond, without a justifiable excuse, and the government is prejudiced in any manner, the forfeiture should be enforced unless justice requires otherwise. When considering whether or not justice requires the enforcement of a forfeiture, a court must look at several factors, including: 1) the willfulness of the defendant's breach of the bond, 2) the cost, inconvenience and prejudice suffered by the government, and 3) any explanation or mitigating factors.

*United States v. Ciotti,* 579 F.Supp. 276, 278 (W.D.Pa.1984), *quoted in, e.g., Commonwealth v. Mayfield,* 827 A.2d 462, 468 (Pa.Super.2003).

Appellee contended that the second *Ciotti/Mayfield* prong requires a monetary expense or cost to the Commonwealth to be associated with Hann's breach of his bail bond conditions, and that the Commonwealth could not assert such a cost. Indeed, the Commonwealth admitted that "Ricky Hann killing Tina Souders was the cheapest thing that could happen for the Commonwealth in this case" because all prosecution was now foreclosed. Notes of Testimony, Bail Forfeiture Hearing (N.T.), Apr. 19, 2011 at 61–62. The Commonwealth contended, however, that it suffered inconvenience and prejudice by not being able to prosecute Hann, and thus forfeiture remained proper. *Id.*

After taking the matter under advisement, the trial court on May 2, 2011, issued a written opinion granting the Commonwealth's petition for full forfeiture of the bail. Accepting that Hann unquestionably violated the conditions of bail, the court proceeded to examine the case under the three *Ciotti/Mayfield* prongs to determine whether justice required enforcement of the forfeiture order. First, in the court's view, there was little doubt that Hann willfully violated the conditions by driving to Souders' house, taking her by force into the wooded area behind her house, and shooting her twice with a sawed-off shotgun. Second, the trial court disagreed with Appellee that the Commonwealth was required to exhibit a financial

cost associated with Hann's violation of the terms of his bail bond. The court held that while Hann's suicide spared Fulton County the expense of prosecution, the ultimate cost to Fulton County lay in its inability to prosecute Hann for his criminal activity and the loss of Souders' life. Tr. Ct. Op. at 8.

Finally, the court found that no mitigating factors existed. On this point, the court noted that Appellee specifically argued that ordering forfeiture in this case would discourage sureties from posting bail in similar cases. In the court's view, however, Appellee "made a professional, business decision to bond Hann ... a business decision not without some measure of risk." *Id.* at 9. The court noted that Appellee could have reviewed the criminal complaint and Hann's violent history before posting bail on his behalf. Further, by signing a surety agreement, Appellee accepted responsibility not only for Hann appearing in court, but also for Hann complying with the remaining terms of the bail bond. Finally, the court noted that the forfeiture was not a means to punish Hann or his estate for Souders' death. Accordingly, the court granted the Commonwealth's petition.

Appellee appealed to the Superior Court, a panel of which reversed in an unpublished memorandum. *See Commonwealth v. Hann,* Docket No. 968 MDA 2011 (Pa.Super.Feb.1, 2012). After reviewing the above-stated precedent, the Superior Court disagreed with the trial court regarding the irrelevance of a monetary cost to the Commonwealth in the analysis of the second *Ciotti/Mayfield* prong. The panel almost exclusively relied upon a comment in *Mayfield,* which in the court's view, mandates that the Commonwealth prove a demonstrable, monetary loss to warrant forfeiture: "the defendant's arrest [in *Mayfield* ] did not require substantial investigative resources and did not require a delay in disposition of the underlying charges. In the absence of at least some demonstrated detriment ... we conclude, as a matter of law, that the record fails to establish a legally cognizable basis for the total forfeiture...." Super. Ct. Mem. Op. at 6 (quoting *Mayfield,* 827 A.2d at 468–69). Pursuant to this language, the panel found controlling "the Commonwealth prosecutor's own admis-

sion" that "the Commonwealth is better off financially by this murder/suicide." *Id.* at 7 (quoting N.T., Apr. 19, 2011 at 62). Therefore, and without examining any other aspect of the *Mayfield/Ciotti* construct, because the Commonwealth did not prove that Hann's willful breach of the bond conditions caused it to suffer "any legally cognizable financial prejudice," the Superior Court held that the trial court committed an error of law in directing full forfeiture and reversed the forfeiture order. *Id.* The Commonwealth filed a petition for allowance of appeal, which this Court granted to examine two, interrelated issues:

1. Is the murder of the Commonwealth's key witness by the defendant while released on bail on charges of previously burglarizing and kidnapping the witness the kind of prejudice to the Commonwealth that supports forfeiture of the full amount of the bail?

2. Does the Commonwealth need to prove a financial loss in order to establish prejudice to support the bail forfeiture?

*Commonwealth v. Hann,* 616 Pa. 541, 51 A.3d 178 (2012) (*per curiam*).

The Commonwealth views this case as a simple question of law: whether the Superior Court has improperly grafted a financial detriment requirement onto the plain language of Pa. R.Crim.P. 536 and the *Ciotti/Mayfield* factors. First, the Commonwealth contends, the plain language of Rule 536, *see supra* p. 61, simply does not require the government to have suffered a financial loss associated with a defendant's breach of a bail bond. The Commonwealth suggests that the several courts which have applied Rule 536 and the *Ciotti/Mayfield* factors, including the *Mayfield* Court itself, have recognized that a financial detriment is not required under the rule, as courts have applied the second prong of the forfeiture framework—"cost, inconvenience, and prejudice"—as factors the trial court must consider, not conjunctive elements the Commonwealth must prove.

The Commonwealth notes that the *Mayfield* Court stated, "when a defendant breaches a bail bond, without a justifiable

excuse, *and the government is prejudiced in any manner* the forfeiture should be enforced unless justice requires otherwise." Commonwealth's Brief at 9 (quoting *Mayfield,* 827 A.2d at 468) (emphasis by the Commonwealth). Accordingly, in the Commonwealth's view, the plain language of Rule 536 supports an underlying policy that forfeiture is proper in cases such as this because the bail (and the concomitant threat of forfeiture) serves as a deterrent against the defendant absconding and his breaching other bond conditions, such as intimidating or retaliating against witnesses, *see* Pa.R.Crim.P. 526(A)(4), as well as refraining from any other criminal activity. *See id.* 526(A)(5).

In that light, the Commonwealth additionally notes that no party argues that Hann did not breach the bond conditions by willfully murdering Souders. Likewise, no party contends that Appellee did not knowingly and intelligently execute the bond surety agreement, placing his own money in jeopardy should "the defendant [fail] to appear as required or . . . comply with the conditions of the bail bond. . . ." AOPC Form 414A5–06, Surety Information Page, dated Feb. 19, 2011, *found at* R.R. 4a.

Given this, and anticipating that Appellee will argue that requiring forfeiture in this case will put a "chilling effect" on the bail bond industry, the Commonwealth preemptively argues that Appellee did not have to accept the bail bond. Rather, the Commonwealth asserts, Appellee had multiple options before him other than immediately going to the Franklin County jail to bail out Hann, such as comprehending that this case involved a violent domestic kidnapping, investigating Hann's background, and realizing that Hann and Souders had domestic incidents in the past. The Commonwealth maintains that after performing even a perfunctory investigation, Appellee could have made a calculated analysis as to whether to accept the request for a bail bond. Instead, the Commonwealth argues, Appellee knowingly made a business decision to sign the bond and surety agreements, bail Hann out of jail, and suffer the potential consequences of Hann's breach of the bail bond conditions. Moreover, the potential

"chilling effect on the bail bonds industry" in the Commonwealth's view is nugatory, because the identical provisions for forfeiture apply no matter whether the defendant himself, a family member, or a professional bondsman posts the requisite amount of bail.

Appellee counters by noting that, pursuant to Article I, Section 14 of the Pennsylvania Constitution, bail is generally required in all non-homicide cases for three reasons: (1) ensuring the presumption of innocence; (2) avoiding the imposition of sanctions prior to trial and conviction; and (3) giving the accused the maximum opportunity to prepare a defense. *Commonwealth v. Truesdale,* 449 Pa. 325, 296 A.2d 829, 835 (1972). In Appellee's view, under this tripartite framework, the only purpose of the threat of bail forfeiture is to ensure a defendant's appearance in court and to "encourage bail bondsmen to actively seek the return of absent defendants." *Commonwealth v. Hernandez,* 886 A.2d 231 (Pa.Super.2005). Appellee contends forfeiture cannot be utilized for other purposes without eroding the presumption of innocence and imposing sanctions, endangering these constitutional norms.

Appellee further notes that the Superior Court has determined that any new criminal offenses a defendant may commit while released on bail or jumping bail cannot be calculated in the costs associated with bail forfeiture. *Accord Commonwealth v. Culver,* 46 A.3d 786, 794 (Pa.Super.2012) ("we find no support [for permitting costs associated with new criminal charges] and further determine that to do so would run contrary to the various policy considerations underlying remission for bail forfeitures."). Appellee thus argues that the sole purpose of bail forfeiture must be the recouping of any costs associated with recapture or additional investigations and prosecutions, *see Hernandez, supra;* the malfeasance of the defendant should, according to Appellee, be deemed otherwise immaterial. Accordingly, in Appellee's view, it is incumbent upon the Commonwealth to demonstrate it suffered an actual, financial detriment in order to satisfy the second prong of the *Mayfield/Ciotti* construct. Appellee is supported by *amicus curiae* the American Bail Coalition, which argues that public

policy militates against this Court reinstating the forfeiture order, as such a holding "would essentially make [bail bondsmen] guarantors of [a] defendant's law-abiding behavior while released on bail" and irreparably harm the bail bonds industry. *Amicus Curiae* American Bail Coalition's Brief at 10 (quoting *Culver*, 46 A.3d at 794).

In accord therewith, Appellee continues that forfeiture should not be used as an insurance policy for good behavior; rather, it should only be utilized to offset or reimburse the Commonwealth for resources expended in chasing and apprehending a fleeing defendant. According to Appellee, such a policy will reduce uncertainty in the forfeiture process while ensuring that the Commonwealth will be made whole for any losses sustained. Concomitantly, this policy will serve as a deterrent to defendants from fleeing. Finally, it would prevent forfeiture from being punitive in nature, and, at least in Appellee's eyes, would put more of the onus on prosecutors and bail authorities to set appropriate bail levels for the accused.

■■■■ Our standard of review in bond forfeiture cases is well-settled: "the decision to allow or deny a remission of bail forfeiture lies with the sound discretion of the trial court." *Commonwealth v. Chopak*, 532 Pa. 227, 615 A.2d 696, 701 (1992). Trial courts unquestionably have the authority to order the forfeiture of bail upon the breach or violation of any condition of the bail bond. *Id.* at 701–02. In bond forfeiture cases, an abuse of that discretion or authority will only be found if the aggrieved party demonstrates that the trial court misapplied the law, exercised its judgment in a manifestly unreasonable manner, or acted on the basis of bias, partiality, or ill-will. *Culver*, 46 A.3d at 790. To the extent the aggrieved party alleges an error of law, this Court will correct that error, and our scope of review in doing so is plenary. *Id.*

■■■■ For reasons further explained below, however, we do not view this case as a simple matter of whether the trial court abused its discretion in granting the Commonwealth's petition for full forfeiture. Indeed, this Court has not had occasion to

comment upon or interpret the meaning surrounding Rule 536(A)(2)(d)'s direction that full enforcement of a forfeiture order may be set aside if "justice does not require" full enforcement. Accordingly, this case presents an issue of interpretation of the relevant rules of criminal procedure, a question of law, for which our standard of review is *de novo* and our scope of review is plenary. *Commonwealth v. Far,* 616 Pa. 149, 46 A.3d 709, 712 (2012).

We begin our analysis by first examining the rules contained within Chapter 5, Parts C, C(1), and C(2) of the Pennsylvania Rules of Criminal Procedure, which control the imposition of bail and bail bonds, and the forfeiture thereof. As a precursor, the General Assembly has given this Court the exclusive authority to impose rules concerning the administration of bail. *See* 42 Pa.C.S. § 5702 (providing "all matters relating to the fixing, posting, forfeiting, exoneration and distribution of bail and recognizances shall be governed by general rules."); *see also* Pa. Const. Art. V, § 10(c) ("The Supreme Court shall have the power to prescribe general rules governing practice, procedure and conduct of the courts . . . and the administration of all courts. . . .").

Specific to this appeal, we note that many of the provisions contained within the rules of criminal procedure reference the defendant's obligation to "appear at all subsequent proceedings as required and comply with all the conditions of the bail bond." Pa.R.Crim.P. 525(A) (defining a bail bond); *see also id.* 523(A)(10); 524(A) & (B); 525(E); 527(A)(3); 528(C). Importantly, this Court promulgated that every bail bond executed in the Commonwealth "shall" contain the following conditions:

(1) appear at all times required until full and final disposition of the case;

(2) obey all further orders of the bail authority;

(3) give written notice to the bail authority, the clerk of courts, the district attorney, and the court bail agency or other designated court bail officer, of any change of address within 48 hours of the date of the change;

(4) neither do, nor cause to be done, nor permit to be done on his/her behalf, any act as proscribed by Section 4952 of the Crimes Code (relating to intimidation of witnesses or victims) or by Section 4953 (relating to retaliation against witnesses or victims), 18 Pa.C.S. §§ 4952, 4953; and

(5) refrain from criminal activity.

*Id.* 526(A)(1)-(5). In accord with the conditions provided by Rule 526(A), prior to a defendant's release, the defendant and his surety, if applicable, shall sign the bail bond, thus verifying the type of bail, the conditions of the bail bond, and the potential consequences of failing to comply with the bail bond. *Id.* 525(D)-(E). If a surety (such as a bail bondsman) provides the required bail, the surety further agrees that he "is liable for the full amount of the monetary condition in the event the defendant fails to appear or comply as required by these rules." *Id.* 535(B).

Should a defendant violate any condition of the bail bond, several sanctions are authorized by Rule 536(A), including revocation of release, arrest, and changes to the conditions of the bail bond. The bail authority may also issue a rule to show cause to the defendant and his surety (including a bail bondsman) as to why revocation or a change in conditions should not occur. Most relevant to this case, in accord with Rule 535(B), when any condition of a monetary bail is violated, "the bail authority may order the cash or other security forfeited and shall state in writing or on the record the reasons for so doing." *Id.* 536(A)(2)(a). However, "[t]he bail authority may direct that a forfeiture be set aside or remitted if justice does not require the full enforcement of the forfeiture order." *Id.* 536(A)(2)(d).

As noted, no one disputes that Hann murdered Souders and, therefore, no party argues that Hann did not breach, at a minimum, clauses (4) and (5) of the bail bond agreement and Rule 526(A). Rather, the question presented in this appeal is whether "justice does not require the full enforcement of the forfeiture order," or, indeed, no enforcement at all, because of the Commonwealth's admission during the bail forfeiture hearing that it sustained no monetary loss in light of the murder-

suicide. In reversing the trial court, the Superior Court held that no enforcement was proper under its understanding of the second prong of the *Ciotti/Mayfield* factors: the cost, inconvenience and prejudice suffered by the government. Under its reading of the second prong, the panel below determined that the Commonwealth must prove a "demonstrated detriment" to the Commonwealth for a "legally cognizable basis" for forfeiture to exist. Super. Ct. Mem. Op. at 6. Given the Commonwealth's concession that "the Commonwealth is better off financially by this murder/suicide," the panel found that no financial prejudice existed to the Commonwealth, and therefore no basis for forfeiture existed. *Id.* at 7.

We respectfully do not view such a strict reading of the *Ciotti/Mayfield* construct as consistent with law or justice. Preliminarily, we note that this Court has never considered, let alone adopted, the *Ciotti/Mayfield* factors as the controlling standard for evaluating whether "justice requires forfeiture" under Rule 536(A)(2)(d). To that end, the parties only advocate analysis of this case under the three prongs of *Ciotti/Mayfield.* We do not fault them in this regard, as the *Ciotti/Mayfield* analysis, up to this point, has been binding in the trial and Superior Courts and is thus the only existing framework in the Commonwealth. Moreover, we view the construct as a sufficient starting point for determining the appropriate standard under Rule 536(A)(2)(d).[2]

Nevertheless, for various reasons, in our view the construct has been applied too rigidly by both state and federal trial and intermediate appellate courts. As noted above, the decision to order forfeiture in the first instance belongs solely to the discretion of the trial court. *Chopak*, 615 A.2d at 701–02. Despite this well-settled discretion, courts have seemingly concentrated on a strict reading of *Mayfield* (and, by corollary, *Ciotti*) that the Commonwealth must prove a demonstra-

2. As such, and despite our elaboration of the *Ciotti/Mayfield* construct *infra,* we leave for another day an examination of the viability of *Ciotti, Mayfield,* their progeny, and related cases as neither party explicitly formulates such a challenge.

ble monetary loss in order to avail at a forfeiture proceeding. In contrast, appellate courts in other jurisdictions have warned that forfeiture decisions should be based upon an examination of the totality of the circumstances presented in the individual case, and no one point or factor should be talismanic in making that determination. *See State v. Torres,* 87 P.3d 572, 583 (Okla.2004). The relative importance of each factor is for the individual trial court to ascertain "inasmuch as it may vary from case to case." *Id.*

The logic of the Oklahoma Supreme Court, in our view, is sound. Indeed, the language of Rule 536(A)(2)(d), that bail forfeiture "may ... be set aside or remitted if justice does not require full enforcement of the forfeiture order" implicates a case-by-case analysis of when forfeiture is or is not proper, and whether that forfeiture should be for the full sum of the bail or some reduced amount. *Accord Chopak,* 615 A.2d at 701–02; Pa.R.Crim.P. 536(A)(2)(d) (providing a trial court with the discretion not to require full enforcement of a forfeiture order).

This is not to say, however, that factors such as those utilized in *Ciotti/Mayfield* are irrelevant. To the contrary, courts throughout the country have employed not only the three factors from *Ciotti/Mayfield,* but also a host of other considerations that, in our view, are equally relevant to the determination of whether justice requires full enforcement of a forfeiture order.[3] Recently, the New Jersey Supreme Court, in *State v. Korecky,* 169 N.J. 364, 777 A.2d 927, 934 (2001), synthesized a non-exclusive list of various dynamics employed by appellate courts of both state and federal jurisdictions, especially in cases such as the one *sub judice* "involving a condition other than [non]-appearance...." Specifically, the *Korecky* Court found relevant the following factors for

3. We are compelled to note, however, that while the *Ciotti* Court cited to decisions of various United States Circuit Courts of Appeal in fashioning the construct, some of which are discussed *infra,* the Superior Court from this case, back to *Mayfield,* and further back to the 1994 decision of *Commonwealth v. Atkins,* 434 Pa.Super. 559, 644 A.2d 751 (1994), has, without discussion or scrutiny, accepted and followed the three elements of *Ciotti.*

determining whether justice required full enforcement of a forfeiture order:

(1) whether the applicant is a commercial bondsman; (2) the extent of the bondsman's supervision of the defendant; (3) whether the defendant's breach of the recognizance of bail conditions was willful; (4) any explanation or mitigating factors presented by the defendant; (5) the deterrence value of forfeiture; (6) the seriousness of the condition violated; (7) whether forfeiture will vindicate the injury to public interest suffered as a result of the breach; (8) the appropriateness of the amount of the recognizance of bail; and (9) the cost, inconvenience, prejudice or potential prejudice suffered by the State as a result of the breach. That list is not exhaustive, and trial courts may consider other factors as interests of justice require.

*Id.* at 934–35 (internal citations and quotations omitted); *see also Torres*, 87 P.3d at 582–84; *State v. Vaughn*, 11 P.3d 211 (Okla.2000); *State v. Hedrick*, 204 W.Va. 547, 514 S.E.2d 397 (1999); *McKenna v. State*, 247 S.W.3d 716 (Tex.Crim.App. 2008); 8A Am.Jur.2d *Bail & Recognizance* § 173 (last updated May 2013). Thus, we turn now to these factors, albeit in a slightly modified order. In so doing, we reiterate that courts should look to these as well as other factors as justice dictates on a case-by-case basis, understanding that the parameters of each will be applied differently to each individual forfeiture proceeding.

Instantly, there is little dispute that Hann's breach of his bail bond conditions was willful,[4] and that there can be no explanation of mitigating factors presented by a representative of Hann or Appellee;[5] thus, the evidence in this case clearly weighs in favor of forfeiture. Indeed, for purposes of the whole of Pennsylvania law, these two factors need not be extensively examined, as any evidence of willful misconduct or mitigation by either a defendant or his surety, and whether that evidence militates in favor of or against forfeiture, should be self-explanatory.

4. *Korecky* factor number 3; *Ciotti/Mayfield* factor number 1.

5. *Korecky* factor number 4; *Ciotti/Mayfield* factor number 3.

In regard to this case, perhaps foremost is how various jurisdictions have examined the cost, inconvenience, and prejudice or potential prejudice, if any, suffered by the government.[6] Preliminarily, we note that in 1992, this Court, in *Chopak,* found that a partial forfeiture of bail was a proper "consequence to one who flees in violation of their bail," despite the fact that the Commonwealth had not expended any resources in apprehending the defendant. 615 A.2d at 703. Accordingly, and albeit outside of the *Ciotti/Mayfield* construct, this Court has authorized forfeiture without any evidence of a particularized, monetary detriment to the Commonwealth.

Indeed, while a forfeiture amount should "bear some reasonable relation to the cost and inconvenience to the government," *United States v. Kirkman,* 426 F.2d 747, 752 (4th Cir.1970), the "government has no obligation to furnish a bill of costs, nor can the cost and inconvenience factor be dismissed [against the government] simply because they were not substantial." *United States v. Nguyen,* 279 F.3d 1112, 1117 (9th Cir.2002). Under this reasoning, forfeiture has been deemed proper in a case where a defendant breached a travel restriction, which had been placed as a condition of bail, despite there being no direct cost to the government for violation of that restriction. *See United States v. Stanley,* 601 F.2d 380 (9th Cir.1979). Similarly, the Rhode Island Supreme Court upheld a total forfeiture of a $250,000 bail due to a defendant's failure to appear for a pre-trial conference, which led to a demonstrated cost to the government of only $200. *See State v. Werner,* 667 A.2d 770, 774–75 (R.I.1995). In so doing, the court echoed the above sentiments that the "relationship between the amount of bail forfeited and the costs incurred by the state associated with a defendant's violation of his or her recognizance" is of no moment if a concomitant inconvenience or prejudice to the government or court is otherwise suffered. *Id.* The fair conclusion, then, is that cost, inconvenience, and prejudice are significant factors, but remain only one of multiple dynamics for the trial court to weigh

6. *Korecky* factor number 9; *Ciotti/Mayfield* factor number 2.

in deciding whether justice requires full, partial, or no forfeiture of bail. Further, and equally important, neither the lack of pecuniary loss or monetary prejudice should outweigh the totality of other concerns presented by an individual case.

We next turn to the surety's status (or non-status) as a bondsman.[7] Courts have uniformly held that a surety's status as a bondsman tends to lean in favor of forfeiture. "The driving force behind a surety's provision of a bond is the profit motive." *Korecky*, 777 A.2d at 934. In making the business decision of whether to take a bail bond, "it is not unreasonable to conclude that [a bondsman] should have been fully cognizant of his responsibilities and the consequences of [a defendant's] breach of the conditions of the bond." *Werner*, 667 A.2d at 775. Indeed, such calculation involves "a known business risk ... for economic gain-the premium paid for the bond." *Korecky*, 777 A.2d at 934 (quoting *State v. Polanco*, 332 N.J.Super. 436, 753 A.2d 1170, 1174 (App.Div.2000)).

Similarly, a surety may have a responsibility to supervise the defendant once released, whether or not he is a bondsman.[8] In *United States v. Mizani*, 605 F.2d 739 (4th Cir. 1979), the brother of a defendant posted a surety bond for $100,000 to secure the defendant's release pending appeal of a conviction for drug trafficking. Upon denial of the appeal, federal marshals attempted to take the defendant into custody, but were unable to locate him. It was not until almost three years later that the defendant was apprehended in Germany and extradited to the United States. The district court ordered full forfeiture (notably, without proof of any costs by the government), and the court of appeals affirmed. In so doing, the court explicitly noted upon his release, the defendant "did not stay under the supervision of [his brother, who] ... testified that he was unaware of [the defendant's]

7. *Korecky* factor number 1. Interestingly, the *Ciotti* decision also mentions this as a consideration, outside of the oft-cited three-pronged construct, *see Ciotti*, 579 F.Supp. at 278 (citing, *e.g.*, *United States v. Frias–Ramirez*, 670 F.2d 849, 852 (9th Cir.1982)), whereas *Mayfield* and other Superior Court cases do not. The *Ciotti* Court did not, however, expound on the parameters of this factor.

8. *Korecky* factor number 2.

whereabouts and did not know that he had left the jurisdiction of the court until he was so advised by the Government." *Id.* at 741. The court therefore found of great importance that the brother did nothing to supervise the defendant when he was outside of custody, nor did he assist the FBI or federal marshals in locating the defendant once he was notified of his abscondment. *Id.* The Court of Appeals for the Seventh Circuit has also opined that while bondsmen do not indemnify an "absolute guarantee" of a defendant's compliance with bail bond conditions, there does arise "a duty on the part of the bondsman to exercise some minimal supervision over the defendant in order to accomplish" such compliance. *Rochelle Bail Agency, Inc. v. Maryland Nat. Ins. Co.,* 484 F.2d 877, 878–79 (7th Cir.1973).

Deterring defendants in general from breaching bail bond conditions,[9] and the seriousness of the condition breached,[10] are equally important considerations. "If a violation of a condition of release is more than technical, the court may require a substantial forfeiture to deter not only the defendant but others from future violations." *Jeffers v. United States,* 588 F.2d 425, 427 (4th Cir.1978); *Korecky,* 777 A.2d at 936. The instant case provides a stark example of a violation that "is more than technical": where the defendant willfully murdered the victim of a prior crime, and accordingly, the government's lone witness in a prosecution, and then turned the gun on himself, preventing any further prosecution. Indeed, even if Hann had not committed suicide, his murder of Souders would have destroyed the Commonwealth's case. "It undercut what trial courts seek to prevent here and in future cases-obstruction of justice." *Korecky,* 777 A.2d at 936. Further, it is self-evident that violating no-contact orders, intimidating or physically harming witnesses, or committing other crimes while free on bail all constitute serious bail bond breaches, to which courts may be inclined to respond with forfeiture orders in order to deter future misconduct.

**9.** *Korecky* factor number 5.

**10.** *Korecky* factor number 6.

Courts should further consider the public interest served by a forfeiture order; [11] but, courts must be careful when examining the potential vindication of a general, public harm that they act in a non-punitive manner, as the object of bail forfeiture "is not to enrich the government or punish the defendant. Nor can it be used as a balm to soothe the disappointment resulting from the inability to punish and rehabilitate." *United States v. Parr*, 594 F.2d 440, 444 (5th Cir.1979) (internal quotation omitted). Nevertheless, "[t]here is an intangible element of injury to the public interest in almost any case where a defendant deliberately" breaches a condition of his bail bond. *State v. Peace*, 63 N.J. 127, 305 A.2d 410, 411–12 (1973) (*per curiam* ). Therefore, when examining the willfulness of the defendant's misconduct while released on bail, courts should also scrutinize the public harm, if any, such malfeasance caused.

Finally, when determining the amount of bail, if any, to be forfeited, the court should consider the appropriateness of the amount of the bail bond "in light of the nature of the offense with which [the] defendant was charged." [12] *United States v. Frias–Ramirez*, 670 F.2d 849, 853 (9th Cir.1982); *see also United States v. Amwest Surety Ins. Co.*, 54 F.3d 601, 604–05 (9th Cir.1995). Such an examination will assist the forfeiture court in determining if a partial remission of the bail is appropriate, especially in circumstances where the initial bail may have been too high.

Turning back to the current status of Pennsylvania jurisprudence on this issue, we further note that Rule 536 is silent regarding who bears the burden of proof at a forfeiture hearing and what that burden is; and, given, as previously mentioned, that this appeal represents our initial foray into interpreting Rule 536, we are compelled to opine upon it as well. The parties to this case, apparently under their understanding of *Mayfield,* have operated under the assumption that the Commonwealth bore the burden of proving, by clear

11. *Korecky* factor number 7.

12. *Korecky* factor number 8.

and convincing evidence, the violation of a condition of release pursuant to Rule 536(A)(2)(a) such that a forfeiture order could be entered, and that justice required full enforcement of that order, pursuant to Rule 536(A)(2)(d). Neither of the courts below commented on which party bore the burden or the scope of that burden.

We note that a plain reading of Rule 536(A)(2), as well as decisions from the Superior Court and courts of our sister states, do not support the construct utilized by the parties in this case. The Superior Court, in *Commonwealth v. Fleming*, 336 Pa.Super. 377, 485 A.2d 1130, 1131 (1984), in upholding a forfeiture order, commented that the bond surety seeking exoneration from a forfeiture order "failed to meet its burden of proof to justify exoneration from payment of the bond." Several other jurisdictions have similarly held that, upon the government's showing that a defendant breached a condition of a bail bond and a surety had agreed to be bound by the bail bond, the burden then shifted to the defendant or surety to prove that forfeiture was not warranted. *See, e.g., United States v. Gil*, 657 F.2d 712 (5th Cir. Unit B Sept.1981); *United States v. Nolan*, 564 F.2d 376 (10th Cir.1977); *State v. Storkamp*, 656 N.W.2d 539 (Minn.2003); *Korecky*, 169 N.J. 364, 777 A.2d 927; *Allegheny Mut. Cas. Co. v. United States*, 622 A.2d 1099 (D.C.1993); *see also West v. State*, 75 Fla. 342, 78 So. 275 (1918).

We find this to be the appropriate scheme by which trial courts should evaluate whether to order forfeiture. In practice, upon the violation of a monetary condition of release, the Commonwealth may petition the trial court for a forfeiture order. Pa.R.Crim.P. 536(A)(2)(a). Assumedly, such petition would have to allege sufficiently that the defendant was subject to conditions of release, that he breached one or any of those conditions, the amount of the bail subject to forfeiture, if a surety exists for purposes of the bond, and the identity of the surety. The court then has the discretion to order forfeiture at that point, *id.* ("the bail authority may order the cash or other security forfeited and shall state in writing or on the record the reasons for so doing."), but execution may not

occur until written notice has been provided to the defendant and his surety, and the passage of twenty days. *Id.* 536(A)(2)(b) & (c), *quoted supra* note 1.

Only then may the court "direct that a forfeiture be set aside or remitted if justice does not require the full enforcement of the order." *Id.* 536(A)(2)(d). Given that the court must determine the appropriateness of forfeiture in the first instance on the basis of a defendant's misconduct as alleged by the Commonwealth, it follows that the remission of that order should be the burden of the opposing party, either the defendant or his surety. Certainly, by providing for notice to the defendant or surety, and a waiting period of twenty days before execution, the rules contemplate that the party opposing forfeiture will attempt to mitigate the forfeiture order. Similarly, the defendant or his surety should be in the best position to demonstrate why "justice does not require" full enforcement.[13] Accordingly, in a case where the Commonwealth has sought forfeiture, and the defendant or his surety opposes it, a hearing should be held. At that hearing, the Commonwealth has the burden of proving the conditions to bail forfeiture as aforesaid, upon which the burden will shift to the defendant or his surety to justify full or partial remission of bail forfeiture.

This then raises the similar question of what the burden of proof upon these parties is, and, unfortunately, this inquiry has not been answered so routinely by other jurisdictions. At least one federal district court has opined that the initial burden of proving a breach of a bail bond condition must be met by the government to a preponderance of the evidence. *United States v. Vaccaro,* 719 F.Supp. 1510, 1516 (D.Nev.1989). It found a preponderance of the evidence to be the proper standard because bond forfeiture proceedings are

---

13. We further find significant that the rule is written in terms of a negative—"that justice does *not* require full enforcement of the order"—in determining that the burden in this regard be placed with the defendant or his surety. Fundamentally, the Commonwealth would not be the party advocating that justice does not require full enforcement; such party self-evidently would be the defendant or his surety.

civil matters arising out of criminal proceedings. *Id.* We agree with this reasoning, as proceedings that are collateral to a criminal prosecution are consistently held to be civil in nature. *See, e.g., Commonwealth v. Duffey,* 536 Pa. 436, 639 A.2d 1174 (1994) (suspension of driver operating privileges subsequent to conviction for DUI a collateral, civil consequence); *In re Chernoff,* 344 Pa. 527, 26 A.2d 335 (1942) (disbarment proceeding following a criminal conviction is civil in nature). Given the burden on the defendant or surety to then rebut the finding that forfeiture may be ordered due to a breach of a bail bond condition, the same burden—preponderance of the evidence—shall be on the defendant or surety to prove that "justice does not require" full enforcement of the order.

We do not portend to render bail bondsmen, or any surety for that matter, the guarantors of a defendant's conduct while the defendant is released on bail. However, the express language of the Pennsylvania Rules of Criminal Procedure concerning bail, bail bonds, and forfeiture do not limit the availability of forfeiture exclusively to abscondment cases; indeed, the rules permit forfeiture for any breach of a bail condition. Were we to accept the Superior Court's holding, however, that "justice only requires" forfeiture in circumstances where the Commonwealth has expended money in recapturing or retrying the defendant, the rule-based requirements of non-absconding related conditions and the potential for forfeiture for breaching those conditions would become nullities. To the extent the Superior Court so held, we respectfully find that it erred.

We also recognize, however, that the decision concerning whether to order bail forfeiture is one of discretion, which should be exercised on a case-by-case basis under the analysis given herein. Concerning this case specifically, we are constrained to conclude that it is for the trial court, in the first instance, to evaluate the facts and circumstances of this case in conjunction with the multi-factor construct and interpretation of Rule 536 elaborated upon herein. Accordingly, we vacate the order of the Superior Court, and remand this

matter to the court of common pleas for a new forfeiture hearing and disposition in accord with this opinion.

Jurisdiction relinquished.

Former Justice ORIE MELVIN did not participate in the consideration or decision of this case.

Chief Justice CASTILLE and Justices SAYLOR, EAKIN and McCAFFERY join the opinion.

Justice SAYLOR files a concurring opinion.

Justice TODD files a concurring opinion.

Justice SAYLOR, concurring.

I join the majority's able treatment of the appropriate framework for review of bail forfeitures. My only point of difference is that I believe cases like the present one can serve as a vehicle to guide trial-court discretion in the area, so that the high-threshold abuse-of-discretion standard does not serve to insulate vastly disparate treatment of similarly situated cases among our courts of common pleas. Here, I agree with the argument of Appellee and its *amicus* that, absent special circumstances not present here, justice does not require a $100,000 forfeiture by a bail bondsman for the deceased defendant's post-bail criminal behavior. From my personal perspective, then, a penalty of such degree should not be the result of the decision on remand.

Justice TODD, concurring.

I agree with the majority that the Commonwealth, in asserting it has been harmed by a defendant's breach of a bail bond and thus opposing remission of a bail forfeiture, need not show financial loss. *See* Majority Opinion at 660, 81 A.3d at 72. Accordingly, I join the majority's reversal of the Superior Court's order on that basis, and its remand for further proceedings. However, I find the majority's excursion into broader questions—its examination of the other factors a trial court should address in assessing whether justice requires forfeiture, and the burdens of proof in forfeiture proceed-

ings—to be imprudent at this juncture. These issues are outside of our grant of allocatur, see Majority Opinion at 645–46, 81 A.3d at 63, and are not addressed by the parties. As a result, we lack the focused adversarial briefing we normally require before resolving issues on our discretionary docket. Rather, I would await a case directly raising these issues, or refer these broad questions to our Criminal Procedural Rules Committee so that we might benefit from the expertise, and the input from practitioners and other interested parties, that the rule-making process offers.