J-A20019-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| YUNEY RIJO-HENRIQUEZ; SURETY: | : | |
| FINANCIAL CASUALTY AND SURETY, | : | |
| INC. | : | No. 1256 MDA 2022 |
| | : | |
| Appellant | : | |

Appeal from the Order Entered August 12, 2022
In the Court of Common Pleas of Berks County
Criminal Division at CP-06-CR-0001931-2020

BEFORE:   PANELLA, P.J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY MURRAY, J.:              **FILED SEPTEMBER 19, 2023**

Financial Casualty and Surety, Inc. (Appellant), which provided a bail bond for Yuney Rijo-Henriquez (Defendant), appeals from the order denying its petition to vacate bail forfeiture and exonerate surety. After careful review, we affirm.

The trial court summarized the relevant background as follows:

> Defendant was arrested on March 13, 2020, on charges related to an alleged conspiracy and potential delivery of a large quantity of fentanyl. … Bail was set … in the amount of $200,000, secured. On March 17, 2020, bail was posted by [Appellant]. … On October 10, 2020, a new and separate complaint for charges of fleeing and eluding police … was filed against the Defendant and the bail set at $250,000 secured in that matter. The Defendant was taken into custody when he was not able to post bail on the second set of charges and committed to Berks County Jail System

---

[*] Former Justice specially assigned to the Superior Court.

("BCJS"). On Tuesday, October 22, 2020, [Appellant] brought a bail piece[1] in [the original case] before the sitting emergency motions judge … for signature.[2] … [Appellant] indicated on its request for bail piece that the sole reason was the Defendant's failure to remain arrest free. On Friday, October 23, 2020, [the judge] issued an order scheduling a bail piece hearing on Monday, October 26, 2020 ….

On October 26, 2020, the Defendant was brought before the court for two different proceedings. First, a bail reduction petition in [the second case] was heard. The bail in that case was reduced to $25,000 secured, and the Defendant remained in the custody of the [BCJS] on that matter. Second, in the above-captioned docket, the bail piece hearing was held. At that time, the bail piece of [Appellant] was dissolved.[3] Ethan Klein was present at the hearing on behalf of [Appellant]. He requested [Appellant] be

---

[1] "A bail piece is a warrant from the court that gives authority to a surety, or other authorized person, to apprehend the Defendant and bring him before the Court for an alleged violation of the bail." Trial Court Opinion, 10/21/22, at 4.

[2] Pa.R.Crim.P. 536(B) provides "a surety or bail agency may apply to the court for a bail piece," and "[i]f the court is satisfied that a bail piece is required, it may issue a bail piece authorizing the surety or bail agency to apprehend and detain the defendant, and to bring the defendant before the bail authority without unnecessary delay." Here, the trial court signed the bail piece authorizing Appellant

to apprehend and detain the defendant … wherever the defendant may be found[] and bring the defendant without unnecessary delay before a Judge of the Court of Common Pleas at the Berks County Courthouse, Reading, Pennsylvania, to be further dealt with according to law, and for such purposes this shall be your sufficient warrant. The Surety shall inform the District Attorney's Office of the need to place the Defendant on the Jail List for the next available court business day so that a hearing can be held.

Bail Piece, 10/22/20.

[3] "The bail piece was dissolved by [the] court because the [D]efendant was already in custody, albeit on other charges, and had been brought before the court." Trial Court Opinion, 10/21/22, at 5.

- 2 -

removed from the bail. The motion was specifically denied. … **The [dissolution] order indicated that there was no motion before the court for any change of bail, and that any implied motion was a nullity and therefore denied. The dissolution order specifically indicated the court would entertain motions for changes to the bail or for release as surety should they be filed through counsel.** The Defendant posted bail on the newly filed charges and he remained free in the community pending disposition of his charges. **No motion was filed by [Appellant], or through counsel as directed**, to be removed as surety on the Defendant's bail in this docket. The District Attorney's office also did not seek any bail modification or revocation.

After a series of continuances and back up trial dates, on November 9, 2021, the Defendant's case was set for a primary trial to occur on December 9, 2021. Subsequently, at the request of counsel for the Defendant, a date was requested prior to the trial date for a guilty plea and sentence. The date for a guilty plea and sentencing was set for December 7, 2021. When the Defendant failed to appear, a bench warrant was requested, authorized, and ultimately issued on December 8, 2021. On December 17, 2021, a notice of intention to forfeit the bail was generated and served on [Appellant]. On March 4, 2022, counsel for [Appellant] filed the petition to vacate bail forfeiture and exonerate surety. Hearings on the petition of [Appellant] were held on June 2, 2022 and August 3, 2022. The motion was denied on August 12, 2022.

Trial Court Opinion, 10/21/22, at 2-4 (footnotes and emphasis added; original footnotes and some capitalization omitted).[4]

Appellant filed a timely notice of appeal and court-ordered concise statement pursuant to Pa.R.A.P. 1925(b). Appellant presents the following question for review:

---

[4] Berks County indicated that Defendant had not been apprehended at the time it filed its brief. Appellee's Brief at 11.

Did the trial court err in granting full forfeiture of the $200,000.00 bail after [Appellant] obtained a bail piece and requested to be relieved of its bail obligation while the [D]efendant in the underlying case was still in custody on charges in a new case?

Appellant's Brief at 4 (some capitalization omitted).

Appellant argues it "is inconsequential that [D]efendant was incarcerated" on the second set of charges when Appellant obtained the bail piece. *Id.* at 12. Appellant emphasizes its prompt attainment of the bail piece to prevent Defendant's release. *Id.* at 14, 17. Appellant claims that by obtaining the bail piece, it "insured the [D]efendant's [c]ourt appearance regardless of what could have transpired in the second case." *Id.* at 12-13. Appellant acknowledges Defendant willfully breached the bail conditions. *Id.* at 16. However, Appellant maintains the trial court did not properly consider its efforts to keep the Defendant incarcerated after his arrest in the second case. *Id.* at 17. Appellant concludes the trial court abused its discretion in denying Appellant relief while Defendant was in custody. *Id.* at 18.

We adhere to the following standard of review:

The decision to allow or deny a remission of bail forfeiture lies with the sound discretion of the trial court. Trial courts unquestionably have the authority to order the forfeiture of bail upon the breach or violation of any condition of the bail bond. In bond forfeiture cases, an abuse of that discretion or authority will only be found if the aggrieved party demonstrates that the trial court misapplied the law, exercised its judgment in a manifestly unreasonable manner, or acted on the basis of bias, partiality, or ill-will. To the extent the aggrieved party alleges an error of law, this Court will correct that error and our scope of review in doing so is plenary.

***In re Hann***, 111 A.3d 757, 760 (Pa. Super. 2015) (citations, quotation marks, and brackets omitted).

Pennsylvania Rule of Criminal Procedure 536(A) provides for forfeiture as a sanction for violation of bail:

(2) *Forfeiture*

(a) When a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority may order the cash or other security forfeited and shall state in writing or on the record the reasons for so doing. When the surety is a third party, the cash or other security may be ordered forfeited only when the condition of the bail bond violated is that the defendant has failed to appear for a scheduled court proceeding.

(b) Written notice of the forfeiture shall be given to the defendant and any surety, either personally or by both first class and certified mail at the defendant's and the surety's last known addresses.

(c) The forfeiture shall not be executed until 90 days after notice of the forfeiture order.

(d) **The bail authority may direct that a forfeiture be set aside or remitted as provided by law or if justice does not require the full enforcement of the forfeiture order.**

(e) When a magisterial district judge orders bail forfeited pursuant to this rule, the magisterial district judge shall generate a check in the amount of the bail monies he or she has on deposit in the case, and shall send the check and a copy of the docket transcript to the clerk of courts for processing and disbursement as provided by law.

Pa.R.Crim.P. 536(A)(2) (emphasis added).

Rule 536 further provides:

**(C) Exoneration**

> (1) A bail authority, as provided by law or as justice requires, shall exonerate a surety who deposits cash in the amount of any forfeiture ordered or who surrenders the defendant in a timely manner.
>
> (2) When the conditions of the bail bond have been satisfied, or the forfeiture has been set aside or remitted, the bail authority shall exonerate the obligors and release any bail.

Pa.R.C.P. 536(C).[5]

Under Rule 536(A)(2)(a), the Commonwealth may petition for forfeiture when the defendant breaches a condition of release. ***See Commonwealth v. Hann***, 81 A.3d 57, 71 (Pa. 2013). The court has discretion to order forfeiture and provide written notice to the defendant and his surety. ***Id.*** The forfeiture may not be executed before 20 days have passed. ***Id.*** After receiving notice, the defendant or his surety may oppose forfeiture, and "[o]nly then may the court direct that a forfeiture be set aside or remitted if justice does not require the full enforcement of the order." ***Id.*** (citation and quotation marks omitted).

> Accordingly, in a case where the Commonwealth has sought forfeiture, and the defendant or his surety opposes it, a hearing should be held. At the hearing, the Commonwealth has the burden of proving the conditions to bail forfeiture as aforesaid, upon which the burden will shift to the defendant or his surety to justify full or partial remission of bail forfeiture.

---

[5] Rule 536 also permits revocation as a sanction for violating bail. As the trial court observed, the District Attorney did not seek revocation in this case. Trial Court Opinion, 10/21/22, at 3.

- 6 -

*Id.* at 71-72. Again, the Commonwealth did not pursue forfeiture in this case.

Rule 536(A)(2)(d) provides that a court may set aside or remit bail forfeiture "if justice does not require the full enforcement of the forfeiture order." Historically, Pennsylvania courts relied on considerations expounded by the United States District Court for the Western District of Pennsylvania:

> When the defendant breaches a bail bond, without a justifiable excuse, and the government is prejudiced in any manner, the forfeiture should be enforced unless justice requires otherwise. When considering whether or not justice requires the enforcement of a forfeiture, a court must look at several factors, including: 1) the willfulness of the defendant's breach of the bond, 2) the cost, inconvenience and prejudice suffered by the government, and 3) any explanation or mitigating factors.

*Commonwealth v. Mayfield*, 827 A.2d 462, 468 (Pa. Super. 2003) (citing

*United States v. Ciotti*, 579 F. Supp. 276, 278 (W.D.Pa. 1984)).

In 2013, our Supreme Court rejected a strict application of the *Mayfield* factors. *Hann*, 81 A.3d at 66. The Court reviewed practices in other jurisdictions and concluded the language of Rule 536(A)(2)(d) "implicates a case-by-case analysis of when forfeiture is or is not proper, and whether that forfeiture should be for the full sum of the bail or some reduced amount." *Id.* at 67. The Court referenced the "non-exclusive list" of factors identified by the New Jersey Supreme Court:

> (1) whether the applicant is a commercial bondsman; (2) the extent of the bondsman's supervision of the defendant; (3) whether the defendant's breach of the recognizance of bail conditions was willful; (4) any explanation or mitigating factors presented by the defendant; (5) the deterrence value of forfeiture; (6) the seriousness of the condition violated; (7) whether forfeiture will vindicate the injury to public interest

suffered as a result of the breach; (8) the appropriateness of the amount of the recognizance of bail; and (9) the cost, inconvenience, prejudicial or potential prejudice suffered by the [s]tate as a result of the breach. That list is not exhaustive, and trial courts may consider other factors as interests of justice require.

*Id.* at 67-68 (citing ***State v. Korecky***, 777 A.2d 927, 934-35 (N.J. 2001)).

The Supreme Court instructed "that courts should look to these as well as other factors as justice dictates on a case-by-case basis, understanding that the parameters of each will be applied differently to each individual forfeiture proceeding." *Id.* at 68.

Instantly, the trial court addressed the ***Mayfield*** factors and stated it had also considered the factors set forth in ***Hann***. ***See*** Trial Court Opinion, 10/21/22, at 7-14. The trial court addressed the willfulness of Defendant's breach, stating:

The purpose of bail is to assure the Defendant's appearance in court, while being an amount that is potentially able to be posted for the Defendant to allow the Defendant to remain in the community in keeping with the presumption of innocence, while still acknowledging the seriousness of the charge before the court and community protection. As the main purpose of bail is to assure court appearances, the failure to appear in court as required is a serious violation of bail. The Defendant, through [Appellant], posted bond on March 17, 2020. While this docket was pending, the [D]efendant was arrested on additional (and unrelated) charges. After posting bail in the second case, after the modification on October 26, 2020, the Defendant continued to appear as required in this docket. The Defendant set his case for a primary trial set to occur on December 9, 2021. Within a week of the scheduled trial date, the Defendant met with his attorney in his office, on November 30, 2021, and determined the best course of action was to enter a guilty plea. The paperwork was prepared, and the case was set for a plea on December 7, 2021. The Defendant failed to appear for the plea at which time a bench

warrant was issued. The Defendant has not yet been apprehended. Even giving the Defendant the benefit of the doubt that perhaps he was unaware of the December 7, 2021 date, as no scheduling order was issued, he still ultimately failed to appear at the December 9, 2021 date that had been set for trial; a date for which he had been provided a scheduling order. The Defendant has not yet been apprehended on the bench warrant that was issued for his failure to appear. Absent any justifiable excuse, the [D]efendant's failure to appear was willful.

*Id.* at 8-9.

The trial court next considered the cost, inconvenience, and prejudice

suffered by the government, recognizing that Appellant

alleges a deficiency as to testimony as to this prong. The assigned district attorney and [D]efendant's trial counsel gave testimony at the hearing about the circumstances of the Defendant's case leading up to the issuance of the bench warrant. As the [D]efendant was a fugitive, no trial was able to occur as scheduled on December 9, 2021. The government has no obligation to furnish a bill of costs, nor can the cost and inconvenience factor be dismissed, against the government, simply because they may not be substantial. A financial detriment is not required under the rule, as courts have applied the second prong of the forfeiture framework … as factors the trial court must consider, not conjunctive elements the Commonwealth must prove. The **Mayfield** and **Hann** framework are factors to be considered but are not a required checklist.

The Defendant failed to appear at his guilty plea[,] which was set two days prior to trial at the request of his attorney. Had the guilty plea not occurred for reasons beyond the failure to appear, the trial of the Defendant would have occurred as scheduled. … The Commonwealth prepared its case for trial on December 9, 2021, which would include issuing subpoenas for witnesses, although the witnesses were released upon the authorization for the bench warrant.

The allegations against the Defendant are of the most serious nature. Specifically, he was alleged to have committed a conspiracy to deliver and then the delivery of approximately 100 grams of fentanyl, and other related charges under the Drug,

Device and Cosmetic Act, along with receiving stolen property (a gun). The high dollar amount of the bail is proportional to the seriousness of his charges and in [an] amount that should have assured his appearance, as even posting a portion should be a significant expense for an average defendant. There is an intangible element of injury to the public interest in almost any case where a defendant deliberately breaches a condition of his bail bond. The Commonwealth was prejudiced by [Defendant's] disappearance, which has delayed the disposition of his underlying charges as he remains at large.

*Id.* at 9-10 (citations omitted).

In discussing any relevant explanation or mitigating factors, the trial court opined:

It should be noted that [Appellant] is a commercial bondsman. Courts have uniformly held that a surety's status as a bondsman tends to lead in favor of forfeiture. *Hann*, [81 A.3d at 69; *see also id.* ("In making the business decision of whether to take a bail bond, it is not unreasonable to conclude that a bondsman should have been fully cognizant of his responsibilities and the consequences of a defendant's breach of the conditions of the bond." (citation, quotation marks and brackets omitted)]. The driving force behind a surety's provision of a bond is the profit motive. This is the basis for the burden being placed on the aggrieved party, the bondsman, to show that the court misapplied the law, exercise manifestly unreasonable judgment, or acted on the basis of bias, partiality, or ill-will to that party's detriment on appellate review.

[Appellant] asserts that its actions within the first ninety (90) days to ascertain the whereabouts of [Defendant] were done promptly and in good faith as required by 42 Pa.C.S.A. [§] 5747.1, and therefore the forfeiture and remittal should be set aside. In support of their position, [Appellant] presented testimony that they attempted to be removed from the Defendant's bail by the filing of the bail piece on October 22, 2020, before the emergency motions judge, after the Defendant was arrested on fleeing and eluding charges. As previously discussed, the bail piece was dissolved six days later, on October 26, 2020, with the issue of removal of the surety addressed. The request to be removed from the bail was denied on the record and again addressed specifically

- 10 -

in the Dissolution Order. **The [c]ourt communicated to [Appellant] that it needed to file a motion through counsel asking to be removed as surety. No further action was taken by [Appellant] to be removed from the bail. There was no further attempt to remove [Appellant] as surety, only the request for a bail piece.**

At the first hearing on [Appellant's] motion, on June 2, 2022, Ms. Sheila Smith indicated the belief of [Appellant] that the Defendant immediately absconded on October 27, 2020, following the posting of the bail in the second matter and shortly after the dissolution of the bail piece by the court. This was an unsuccessful attempt to shift the responsibility for the Defendant's appearance (or lack thereof) on the [c]ourt or the District Attorney's Office. Additionally, contrary to Ms. Smith's testimony, court records indicate the Defendant had approximately a full year of proper court attendance before his failure to appear and the issuance of the warrant. There was testimony from the Defendant's attorney, Mr. Nigrini, that there was no contact from [Appellant], that he recalls, from the time he filed the bail motion in the second case until after the bench warrant was issued. This was not contradicted by [Appellant]. This establishes the lack of the extent of the bondman's supervision of the Defendant considering the large amount of the surety posted.

Further, the court file includes the preliminary arraignment form of the Magisterial District Judge…. This form indicates the Defendant was twenty-seven (27) years old, was not a U.S. citizen (although he was a permanent resident)[] and had only part-time employment (outside of Berks County) to support his family that included six children. Further, the Clerk of Courts file reveals a "pretrial defendant assessment," dated March 13, 2020 (four days prior to bail being posted by [Appellant]), … which indicated the Defendant was from the Dominican Republic and had resided there for twenty-four (24) years. This establishes significant ties to his home country, and fairly recent immigration, which is information [Appellant] should have been aware of when making its determination of risk in posting the high amount of bail. Further, [Appellant] did not present any testimony that they attempted to secure [Defendant's] passport as a condition of their agency in posting the bail. There is no support for claims that the Commonwealth's failure to file modification or revocation of the bail of the [D]efendant, or the court's failure to impose a higher bail (or in this case, the decision to reduce bail in a second

docket), mitigates a surety's duty to fully investigate a defendant's background before issuing a bail bond.

This is not to say that [Appellant] made no effort to find their client following his failure to appear. [Appellant] presented testimony from Mr. Mikhaeil, a bounty recovery agent, that he had been given the case file for the Defendant on December 7, 2021, which was the date of the [D]efendant's failure to appear. This was prompt action by [Appellant]. The bounty recovery agent met with the Defendant's "wife" who indicated that the last time she heard from him was on November 30, 2021, or perhaps early December, and that she believed he went to the Dominican Republic. Although he could not give the name of the person to whom he spoke, the bounty recovery agent indicated that he placed a call to the warrants division of the Sheriff's department indicating that he had information that the Defendant was in the Dominican Republic. He also further indicated that in mid-December of 2021, he came to see the "DEA" detective from this case and the arresting officer in the Defendant's second case to give them this information as well. The Defendant's attorney in this case, Mr. Nigrini, also indicated that after the bench warrant was issued for the Defendant, Ms. Smith[, on behalf of Appellant,] contacted him with the information provided by Defendant's wife that he had absconded to the Dominican Republic.

*Id.* at 10-13 (some citations and quotation marks omitted).

Finally, the trial court concluded:

Absent any justifiable excuse, the [D]efendant's failure to appear was willful. The question here is not whether [Appellant] made any effort to recover [Defendant], but whether their efforts had a substantial impact on his return. The efforts of [Appellant,] while done promptly in response to the failure to appear[,] have not had any impact on the [D]efendant's apprehension or return, as he remains at large. The Commonwealth was prejudiced by [Defendant's] disappearance, which delayed the disposition of his underlying charges. **It is no defense to the forfeiture of bail given for an absconding defendant that the surety applied for a bail piece**. The Defendant was in custody on another matter. **[Appellant] made no further effort to file a motion to be removed from the Defendant's bail despite specific direction from the court.** As previously noted, this court specifically prompted [Appellant] to file a proper motion upon the

- 12 -

dissolution of the bail piece if they wished to be removed from the [D]efendant's bail. Accordingly, there is a deterrence value to the forfeiture[, for Appellant] to be aware of court orders issued prompting a process[,] even when they view such as a "non-preferred" method. [Appellant], a commercial surety, took a calculated business risk when it agreed to post bail for a defendant with ties out of the country. Having applied the factors delineated in *Mayfield* and in consideration of the additional factors of *Hann*, justice requires full enforcement of the forfeiture order in this matter.

*Id.* at 13-14 (emphasis added; paragraph break omitted).

We discern no abuse of the trial court's discretion. The record reflects the trial court considered the totality of the circumstances in reaching its conclusion that justice required full forfeiture. *See Hann*, 81 A.3d at 67.

To the extent Appellant argues its efforts in seeking the bail piece should be considered part of the "explanation and mitigating factors" prong of *Mayfield*, this argument is unavailing. Following remand from the Supreme Court in *Hann*, this Court observed "that **'mitigating factors' refer to any explanation for the defendant's conduct in violating the terms of his bail bond**, *i.e.*, the defendant failed to appear for a court date because he was caring for his sick child." *In re Hann*, 111 A.3d at 762-63 (emphasis added). Appellant cannot shift blame to the trial court for reducing the amount of bail in the Defendant's second case.

Accordingly, we affirm the trial court's denial of Appellant's petition to vacate bail forfeiture and exonerate surety.

Order affirmed.

- 13 -

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>09/19/2023</u>