**ROCHELLE BAIL AGENCY, INC.,**
Plaintiff-Appellant,

v.

**MARYLAND NATIONAL INSURANCE COMPANY, and Century Surety Underwriters, Inc., Defendants-Appellees,**

and

**William E. Roe, and Norman Z. Flick,**
Third Party Defendants-Appellees.

No. 71–1622.

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 30, 1972.

Decided Aug. 17, 1973.

Donald A. Schabel, Frederick J. Frosch, Indianapolis, Ind., for plaintiff-appellant.

D. Robert Webster, Alan H. Lobley, James W. Treacy, Dean E. Richards, Indianapolis, Ind., for defendants-appellees.

Before HASTINGS, Senior Circuit Judge, CAMPBELL,* Senior District Judge, and MORGAN,** District Judge.

WILLIAM J. CAMPBELL, Senior District Judge.

Following a bench trial in the Southern District of Indiana, judgment was entered for the defendants in a diversity action brought to recover on an indemnity contract. We affirm.

The plaintiff, Rochelle Bail Agency, Inc. ("Rochelle"), as well as the defendants herein are either bail bondsman, corporate bonding companies or their agents. In mid-1966, a client of third-party defendant Norman Z. Flick, one Sherman Kaminsky, was under federal indictment in the Southern District of New York. Attempting to secure Kaminsky's release on bail prior to trial, Flick contacted the defendant Maryland National Insurance Company ("Maryland") and requested that it secure a bond for Kaminsky from its New York correspondent. Maryland contacted the plaintiff in New York and it agreed to write the bond for Kaminsky. The consideration for this undertaking was a full commission for the plaintiff and a complete indemnity from Maryland to hold the plaintiff harmless against loss should Kaminsky flee. Ultimately, Kaminsky entered a plea of guilty to the New York charge, but failed to appear before the court on August 16, 1966, the date set for sentencing.

During the summer and fall of 1966, Rochelle wrote other bonds for Kaminsky in the state courts of New York, without any apparent communication between it and the defendant. One of these bonds was written on October 19, 1966, several months after Kaminsky had been in default in the federal court. Although Rochelle dealt personally with Kaminsky at this time, it did not inquire of him as to the status of the federal case or, specifically, whether he had attended his sentencing. Rochelle exercised no form of supervision over Kaminsky during this period of time.

Thereafter, on May 24, 1967, the federal court in New York ordered Kaminsky's bond forfeited. Appropriate notices were sent to Rochelle and to Cosmopolitan Mutual Insurance Company, a corporate surety with whom Rochelle places its bonds. Cosmopolitan paid the face amount of the bond and debited Rochelle's reserves in a like sum. Rochelle then made demand on Maryland under its indemnity agreement. Maryland refused to pay and this suit followed.

Upon these undisputed facts, the district court ruled that Rochelle had breached its duty as a bail bondsman to supervise Kaminsky and insure his presence in the federal court action. It further held that the plaintiff's failure to supervise Kaminsky materially increased Maryland's risks under the indemnity agreement, thereby discharging Maryland from its obligations thereunder. See Risk v. Risk, 138 Ind.App. 224, 213 N.E.2d 334 (1966); American Casualty Co. v. Idaho First National Bank, 328 F.2d 138 (9th Cir. 1964); Hiern v. St. Paul-Mercury Indemnity Co., 262 F.2d 526 (5th Cir. 1959).

Plaintiff argues on appeal that it owed no duty to its indemnitors to supervise Kaminsky on bail, or to secure his appearance for sentencing. It is well settled, of course, that the purpose of a bail bond is to secure the presence of an accused to answer a pending charge and to respond to the court's judgment. Smith v. United States, 357 F.2d 486 (5th Cir. 1966). In order to enhance the likelihood of a defendant's cooperation with the judicial process, a bond designed to insure obedience to the court's orders is often required. Where a third-party, such as a bondsman, undertakes to assure a defendant's appearance, and secures that promise through a financial stake, there arises a duty on

---

* Senior District Judge William J. Campbell of the Northern District of Illinois is sitting by designation.

** District Judge Robert D. Morgan of the Southern District of Illinois is sitting by designation.

the part of the bondsman to exercise some minimal supervision over the defendant in order to accomplish his continued appearance. See United States v. Payne, 272 F.Supp. 939, 941 (D.Conn. 1967). While this duty does not amount to an absolute guarantee of the defendant's presence, it does encompass making some effort toward that end.

While Rochelle does not maintain that it owes no duty of minimal supervision to the court having jurisdiction over the defendant, it does contend that it owes no such duty to an indemnitor. In this regard, Rochelle relies on language appearing in an opinion of the Florida District Court of Appeals to the effect that where the surety on a bail bond is indemnified by a third-party, the indemnitor is the true bondsman since he bears the ultimate risk of loss. United Bonding Insurance Co. v. Tuggle, 216 So.2d 80, 82 (Fla.App.1968). The remarks of the Florida appeals court were not intended, however, to hold that the existence of the indemnity agreement excuses the surety from exercising any supervision over a defendant. That question was simply not before the Florida court. The court was called upon to decide only the effect of a Florida statute which required an affidavit disclosing the indemnity agreement be filed, simultaneously with the bail bond. The court there held that the purpose of this statute was to place the indemnitor on an equal footing with the surety on the bond so that they might *both* protect the property risked through the indemnity agreement. If the intention of the Florida legislature was to place the surety and the indemnitor on "equal footing" then we must conclude that the surety is not thereby excused from his duty of supervision arising from the bail bond relationship. See also, Carr v. Sutton, 70 W.Va. 417, 74 S.E. 239 (1912).

 Our review of the sparse authority on this issue convinces us that the existence of an indemnity agreement does not release a surety on a bail bond from his responsibility to minimally supervise a criminal defendant. Therefore, Rochelle's breach of its duty to maintain some supervision over Kaminsky increased Maryland's risk under the indemnity agreement, and thereby extinguished its obligation thereunder.[1]

The judgment of the district court for the Southern District of Indiana is affirmed.

Affirmed.

---

1. Rochelle's contention that Kaminsky departed the State of New York and therefore was not within Rochelle's area of supervision also does not persuade. In this regard, we agree with the district court that the enlargement of the conditions of Kaminsky's New York bond so that he might travel to the State of Illinois falls short of demonstrating that Kaminsky, in fact, left the State of New York.