J-A31029-14

2015 PA Super 44

| IN RE: HANN, RICKY LYNN | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| APPEAL OF: PAUL WEACHTER | |
| | No. 571 MDA 2014 |

Appeal from the Order Entered March 21, 2014
In the Court of Common Pleas of Fulton County
Criminal Division at No(s): CP-29-MD-0000015-2011

BEFORE:  BOWES, J., OTT, J., and STABILE, J.

OPINION BY OTT, J.:                    **FILED MARCH 04, 2015**

Paul Weachter, bail bondsman to Ricky Lynn Hann, appeals from the order entered March 21, 2014, in the Fulton County Court of Common Pleas, granting the Commonwealth's petition for bail forfeiture.[1]  Weachter posted a $100,000 bail bond for Hann's release on February 19, 2011.  The next day, Hann killed his girlfriend and himself.  On appeal, Weachter argues the

_____

[1] This is the second time the trial court has granted the Commonwealth's petition for bail forfeiture in this case.  As we will discuss in more detail *infra*, the trial court initially granted the petition, following a hearing, in 2011.  Weachter appealed to this Court, which reversed the trial court's order.  However, the Commonwealth then appealed to the Pennsylvania Supreme Court, which vacated this Court's decision, adopted a new test for determining whether justice requires full forfeiture of a bail bond, and remanded the case to the trial court for a new forfeiture hearing.  **See Commonwealth v. Hann**, 46 A.3d 803 (unpublished memorandum) (Pa. Super. 2012), *rev'd*, 81 A.3d 57 (Pa. 2013).   The order *sub judice* was issued following the second hearing.

trial court abused its discretion when it ordered full forfeiture of the bail bond because (1) all of the other parties involved had the same information as Weachter regarding Hann's potential dangerousness, and (2) a surety should not be held responsible for the post-bail criminal conduct of a defendant. For the reasons that follow, we affirm.

The relevant facts were summarized by the Pennsylvania Supreme Court in a prior appeal as follows:

> In September of 2010, Pennsylvania State Police arrested Ricky Lynn Hann for assaulting his then-girlfriend, Lisa Souders. Following an initial bail hearing, he was released on his own recognizance. Contemporaneous to Hann's arrest and release, Souders obtained a protection from abuse (PFA) order against him.
>
> In November of 2010, police again arrested Hann and charged him with indirect criminal contempt for violating the PFA order. He was subsequently found guilty, but apparently remained free. Then, on February 19, 2011, Souders reported to State Police that the previous day Hann had kidnapped her, and kept her against her will for approximately 24 hours before she was able to escape. Based upon Souders'[s] statement, Trooper Gary Ford filed a criminal complaint against Hann,[2] and received and executed an arrest warrant against him. Hann was arraigned and bail was set at $100,000.
>
> Following the arraignment, arrangements were made with … Paul Weachter, a professional and licensed bail bondsman, for bail to be posted to secure Hann's release. As part of his

---

[2] The criminal complaint included the following charges: kidnapping, burglary, unlawful restraint, terroristic threats, recklessly endangering another person, and simple assault. *See* 18 Pa.C.S. §§ 2901(a)(3), 3502(a), 2902(a)(1), 2706(a)(1), 2705(a)(2), and 2701(a)(3), respectively. The complaint specifically alleged that Hann threatened Souders with a loaded shotgun. *See* Criminal Complaint, 2/18/2011, at 4.

agreement leading to his release, Hann agreed to the following conditions, relevant to this appeal:

1. The defendant must appear at all times required until full and final disposition of the case.

2. The defendant must obey all further orders of the bail authority.

* * *

4. The defendant must neither do, nor cause to be done, nor permit to be done on his/her behalf, any act as proscribed by Section 4952 of the Crimes Code (relating to intimidation of witnesses or victims) or by Section 4953 (relating to retaliation against witnesses or victims), 18 Pa.C.S. §§ 4952, 4953.

5. The defendant must refrain from criminal activity.

* * *

By signing the bail bond, Hann agreed to "appear at all subsequent proceedings as required and comply with all the conditions of the bail bond."

For his part, [Weachter] executed a surety agreement, whereby he acknowledged that he or his heirs and assigns could be responsible for forfeiting the $100,000 bail should Hann fail to appear for a court proceeding or "comply with the conditions of the bail bond." [Weachter] also signed the bail bond. Hann was accordingly released from the Franklin County Prison.

The following day, Trooper Ford was dispatched to Souders'[s] residence, after receiving a report that Hann had accosted Souders and taken her to a wooded area behind her house. Upon his arrival, Trooper Ford heard three gunshots from the area behind the home. Trooper Ford carefully investigated the area and discovered the bodies of Souders and Hann, each dead of apparent shotgun wounds. The county coroner would determine that Souders died of wounds to her abdomen, which caused extensive damage to her liver, lungs, and aorta. Hann succumbed to a shotgun wound to the face. The coroner determined the manners of death of Souders and Hann to be homicide and suicide, respectively. While no inquest was held into the incident, no one disputes the causes or manners of death.

*Commonwealth v. Hann*, 81 A.3d 57, 60-61 (Pa. 2013) (record citations omitted).

On March 1, 2011, pursuant to Pa.R.Crim.P. 536(A)(2)(a), the Commonwealth filed a petition for forfeiture of the $100,000 bail bond Weachter posted for Hann.[3] Following a hearing, on May 2, 2011, the trial court granted the Commonwealth's petition for bail forfeiture. Thereafter, Weachter filed a timely appeal.

On appeal, a panel of this Court reversed the trial court's order based upon its determination that "the Commonwealth ha[d] failed to establish any legally cognizable financial prejudice related to the breach to justify forfeiture."[4] *Commonwealth v. Hann*, 46 A.3d 803 (unpublished memorandum at 7) (Pa. Super. 2012). The Commonwealth then filed an appeal to the Pennsylvania Supreme Court, which reversed the order of the Superior Court and remanded the case to the trial court for a new forfeiture hearing. The trial court conducted the second forfeiture hearing, and on

---

[3] The Rule provides, in relevant part, that "[w]hen a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority may order the cash or other security forfeited[.]" Pa.R.Crim.P. 536(A)(2)(a).

[4] The panel found particularly relevant the fact that the Commonwealth admitted, during the forfeiture hearing, "Ricky Hann killing Tina Souders was the cheapest thing that could happen for the Commonwealth in this case. … The Commonwealth is better off financially by this murder/suicide." *Hann*, *supra*, 46 A.3d 803 (unpublished memorandum at 6) (citing N.T., 4/19/2011, at 61-62).

March 20, 2014, entered an order directing Weachter to forfeit the $100,000

bail bond in full.  This timely appeal follows.[5]

Our well-established standard of review in bail forfeiture appeals is as

follows:

> "[T]he decision to allow or deny a remission of bail forfeiture lies with the sound discretion of the trial court." ***Commonwealth v. Chopak***, 532 Pa. 227, 615 A.2d 696, 701 (1992).  Trial courts unquestionably have the authority to order the forfeiture of bail upon the breach or violation of any condition of the bail bond. ***Id.*** at 701–02.  In bond forfeiture cases, an abuse of that discretion or authority will only be found if the aggrieved party demonstrates that the trial court misapplied the law, exercised its judgment in a manifestly unreasonable manner, or acted on the basis of bias, partiality, or ill-will.  **[*Commonwealth v. ]Culver*,** 46 A.3d [786,] 790 [(Pa. Super. 2012)].  To the extent the aggrieved party alleges an error of law, this Court will correct that error, and our scope of review in doing so is plenary. ***Id.***

***Hann***, ***supra***, 81 A.3d at 65.

Pennsylvania Rule of Criminal Procedure 536 provides two sanctions

when a defendant violates a condition of his bail – revocation of the

defendant's release or forfeiture of the posted bail bond.   Pa.R.Crim.P.

---

[5] On April 1, 2014, the trial court ordered Weachter to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Weachter complied with the court's directive and filed a concise statement on May 15, 2014.

The trial court filed two opinions in this case.  The first, dated March 20, 2014, accompanied the trial court's order directing forfeiture of the bail bond.  We will refer to this as the "Remand Opinion."  The second, dated May 15, 2014, was filed in response to Weachter's concise statement.  We will refer to this as the "Rule 1925 Opinion."

536(A)(1)-(2). Here, there is no dispute Hann violated the conditions of his bail. Moreover, because Hann killed himself after murdering Souders, the revocation of his release was clearly not a sanction available under the facts of this case. Therefore, the Commonwealth only petitioned for forfeiture of the $100,000 bail bond Weachter posted upon Hann's release. However, the Rule further provides that "[t]he bail authority may direct that a forfeiture be set aside or remitted **if justice does not require** the full enforcement of the forfeiture order." Pa.R.Crim.P. 536(A)(2)(d) (emphasis supplied).

Previously, when considering whether justice requires full forfeiture of a bail bond, this Court has deliberated three factors, outlined by the federal district court in **United States v. Ciotti**, 579 F.Supp. 276 (W.D. Pa. 1984):

> 1) the willfulness of the defendant's breach of the bond, 2) the cost, inconvenience and prejudice suffered by the government, and 3) any explanation or mitigating factors.

**Commonwealth v. Mayfield**, 827 A.2d 462, 468 (Pa. Super. 2003). Indeed, the panel of this Court that considered Weachter's original appeal, reversed the trial court's original order of forfeiture because it concluded "the Commonwealth [] failed to establish any legally cognizable financial prejudice related to the breach to justify forfeiture." **Hann**, **supra**, 46 A.3d 803 (unpublished memorandum at 7).

However, when reviewing the initial appeal in this case, the Pennsylvania Supreme Court found "a strict reading of the **Ciotti/ Mayfield** construct" was inconsistent with law and justice, and stated that while the cost and inconvenience to the Commonwealth are "significant factors …

neither the lack of pecuniary loss or monetary prejudice should outweigh the totality of other concerns presented by an individual case." **Hann**, **supra**, 81 A.3d at 66, 69. Rather, the Court emphasized that "the decision to order forfeiture in the first instance belongs solely to the discretion of the trial court," and adopted the following multi-factor test, set forth by the New Jersey Supreme Court in **State v. Korecky**, 777 A.2d 927, 934 (N.J. 2001), "for determining whether justice required full enforcement of a forfeiture order":

> 1) whether the applicant is a commercial bondsman; (2) the extent of the bondsman's supervision of the defendant; (3) whether the defendant's breach of the recognizance of bail conditions was willful; (4) any explanation or mitigating factors presented by the defendant; (5) the deterrence value of forfeiture; (6) the seriousness of the condition violated; (7) whether forfeiture will vindicate the injury to public interest suffered as a result of the breach; (8) the appropriateness of the amount of the recognizance of bail; and (9) the cost, inconvenience, prejudice or potential prejudice suffered by the State as a result of the breach.

**Id.** at 67-68. The Court noted the "list is not exhaustive, and trial courts may consider other factors as interests of justice require." **Id.** at 68.

As this was the Supreme Court's first decision interpreting Rule 536, the **Hann** Court also provided guidance concerning the burden of proof in forfeiture cases. The Court stated:

> [I]n a case where the Commonwealth has sought forfeiture, and the defendant or his surety opposes it, a hearing should be held. At that hearing, the Commonwealth has the burden of proving the conditions to bail forfeiture as aforesaid, upon which the burden will shift to the defendant or his surety to justify full or partial remission of bail forfeiture.

*Id.* at 71-72. Because a forfeiture proceeding is collateral to a criminal prosecution and civil in nature, the Court further determined the proper burden should be by a preponderance of the evidence standard. *Id.* at 72.

Accordingly, recognizing that the decision whether to grant bail forfeiture is within the trial court's discretion, and "should be exercised on a case-by-case basis under the analysis given [therein]," the **Hann** Court remanded the case to the trial court for a new forfeiture hearing. *Id.* As noted above, on remand, the trial court conducted a hearing, and ultimately determined "justice demands forfeiture of the bail bond posted by Weachter." Trial Court Opinion, 5/20/2014, at 17.

In his first issue on appeal, Weachter contends the trial court misapplied the law and abused its discretion when it disregarded the fact that the other parties involved, *i.e.*, the police, the district attorney and the magisterial district justice, had the same information regarding Hann's potential dangerousness as Weachter, and improperly focused on "Weachter's lack of due diligence in failing to thoroughly investigate Hann's background before bailing him out of jail." Weachter's Brief at 11-12. He notes that at the second forfeiture hearing, the arresting state trooper testified that he requested Hann's bail be set at $500,000, but the magisterial district justice set bail at only $100,000. **See** N.T., 1/23/2014, at 51-52. Moreover, Weachter points out that the trooper stated he had attempted to contact the district attorney before bail was set but was unable to reach him, and acknowledged that his failure to charge Hann with

additional crimes, such as witness intimidation and illegal possession of a firearm, "might have been an oversight at that point." *Id.* at 53-54, 56. Weachter argues the trial court "established a double standard whereby a surety is held to a much higher level of scrutiny than the police, the district attorney, and the court system itself." Weachter's Brief at 14. Further, he asserts "the systematic breakdown within the criminal justice system, which failed to further detain Hann, and/or the failure to impose additional bail restrictions, weighs heavily as an 'explanation or mitigating factor' contemplated by [the Supreme Court in] *Hann*." *Id.* at 15-16.

The trial court, however, concluded that "neither the Supreme Court in *Hann* nor Pa.R.Crim.P. 536 permit the blame-sharing result Weachter seeks." Rule 1925 Opinion at 6. We agree.

It is clear the focus of the multi-factor test outlined in *Hann* is on the **actions of the defendant and the surety**. Although Weachter suggests the **inaction** of the police, the district attorney and the magisterial district justice, are relevant mitigating factors under the facts of this case, we disagree. Indeed, the Supreme Court explained in *Hann*:

> Instantly, there is little dispute that Hann's breach of his bail bond conditions was willful, and that there can be no explanation of mitigating factors presented by a representative of Hann or [Weachter]; thus, the evidence in this case clearly weighs in favor of forfeiture. Indeed, for purposes of the whole of Pennsylvania law, these two factors need not be extensively examined, as any evidence of willful misconduct or mitigation by either a defendant or his surety, and whether that evidence militates in favor of or against forfeiture, should be self-explanatory.

- 9 -

***Hann***, ***supra***, 81 A.3d at 68.

When read in context, it is evident that "mitigating factors" refer to any explanation for the defendant's conduct in violating the terms of his bail bond, *i.e.*, the defendant failed to appear for a court date because he was caring for his sick child. There is no support for Weachter's claim that the Commonwealth's failure to file additional charges against a defendant, or the court's failure to impose a higher bail, mitigates a surety's duty to fully investigate a defendant's background before issuing a bail bond.

Moreover, the ***Hann*** Court emphasized the financial aspects of a commercial surety's relationship with a defendant:

> Courts have uniformly held that a surety's status as a bondsman tends to lean in favor of forfeiture. "The driving force behind a surety's provision of a bond is the profit motive." **In making the business decision of whether to take a bail bond, "it is not unreasonable to conclude that [a bondsman] should have been fully cognizant of his responsibilities and the consequences of [a defendant's] breach of the conditions of the bond."** Indeed, such calculation involves "a known business risk ... for economic gain-the premium paid for the bond."

***Id.*** at 69 (citations omitted and emphasis supplied). Weachter, as a commercial surety, took a calculated business risk when he agreed to post bail for Hann, who was charged with kidnapping his ex-girlfriend and threatening her at gunpoint.[6] ***See*** Criminal Complaint, 2/18/2011, at 4.

---

[6] During the second forfeiture hearing, Weachter testified that he saw the criminal complaint and probable cause affidavit issued against Hann on the night he posted the bail bond securing Hann's release. N.T., 1/23/2014, at
*(Footnote Continued Next Page)*

Accordingly, the fact that the state trooper did not file additional charges against Hann, and that the magisterial district justice declined to set bail at $500,000 as requested by the trooper, is not relevant to the question of whether the trial court should have ordered the forfeiture of the $100,000 bond that was posted.[7]   Therefore, Weachter is entitled to no relief on this claim.

Next, Weachter contends the trial court abused its discretion when it held a surety responsible for the post-bail criminal conduct of the defendant. He asserts that while the extent of a surety's supervision of the defendant is a relevant factor in **Hann**, in this case, the trial court acted unreasonably when it "criticize[d] Weachter for having no contact with Hann in the very brief window of time after Hann's release from jail."  Weachter's Brief at 17. Furthermore, Weachter argues that since a surety has no power to arrest or otherwise prevent a defendant from engaging in post-bail criminal activity, "[i]t is completely inconsistent to require a surety to forfeit a bail, on the grounds that the defendant failed to refrain from criminal activity[.]"  **Id.** at 18.

_(Footnote Continued)_ ───────────────

42-43.   Specifically, he acknowledged that he knew Hann had "[h]eld [Souders] with a gun for a day[.]"  **Id.** at 43.

[7] We note Weachter does not allege that the Commonwealth intentionally hid information concerning Hann's potential dangerousness from the surety.  If that had been the case, we would be inclined to find that a relevant factor in evaluating the surety's decision to post bond for the defendant.

However, the **Hann** Court made clear that a surety **may** be held responsible for the post-bail criminal conduct of a defendant. The Court opined:

> Deterring defendants in general from breaching bail bond conditions, and the seriousness of the condition breached, are equally important considerations. "If a violation of a condition of release is more than technical, the court may require a substantial forfeiture to deter not only the defendant but others from future violations." The instant case provides a stark example of a violation that "is more than technical": where the defendant willfully murdered the victim of a prior crime, and accordingly, the government's lone witness in a prosecution, and then turned the gun on himself, preventing any further prosecution. Indeed, even if Hann had not committed suicide, his murder of Souders would have destroyed the Commonwealth's case. "It undercut what trial courts seek to prevent here and in future cases-obstruction of justice." Further, **it is self-evident that violating no-contact orders, intimidating or physically harming witnesses, or committing other crimes while free on bail all constitute serious bail bond breaches, to which courts may be inclined to respond with forfeiture orders in order to deter future misconduct.**
>
> * * * *
>
> We do not portend to render bail bondsmen, or any surety for that matter, the guarantors of a defendant's conduct while the defendant is released on bail. However, the express language of the Pennsylvania Rules of Criminal Procedure concerning bail, bail bonds, and forfeiture do not limit the availability of forfeiture exclusively to abscondment cases; indeed, the rules permit forfeiture for any breach of a bail condition.

**Hann**, **supra**, 81 A.3d at 70, 72 (footnotes and citations omitted; emphasis supplied). Accordingly, in balancing all the relevant considerations, the trial

court may conclude, as it did here, that justice requires full forfeiture of a bail bond when a defendant commits a serious crime while on bail.

Furthermore, while the trial court acknowledged Weachter "had little opportunity to supervise Hann," it noted that Weachter "did not attempt to contact Hann" **in any manner**, after his release. Remand Opinion, at 12. We find no abuse of discretion on the part of the trial court in considering Weachter's lack of **any supervision** of Hann in determining that forfeiture of the bail bond was warranted. Moreover, with respect to Weachter's contention that a "surety has no power under the law to intervene" when a defendant engages in post-bail criminal conduct, other than to file for a bail piece,[8] we find this claim specious. Although Weachter had no power to arrest Hann if he was aware Hann was contacting Souders, the victim of the criminal charges, he certainly could have alerted the police. Accordingly, this claim also fails.

While Weachter only challenged two of the **Hann** factors on appeal, a review of the trial court's remand opinion reveals that the court considered each of the **nine factors** outlined by the Supreme Court in **Hann**,[9] before

_____

[8] Weachter's Brief at 18.

[9] Specifically, the trial court determined: (1) Weachter is a licensed bail bondsmen who made a business decision to bond Hann; (2) Weachter made no attempt to contact Hann after his release from prison; (3) Hann's actions, in violating the terms of his bond, were willful; (4) "no evidence of explanation of Hann's breach or of mitigation was offered by Weachter[;]" (5) "[t]o the extent that forfeiture is a deterrent to future violation,
*(Footnote Continued Next Page)*

concluding that "forfeiture [was] warranted based on Hann's violation of the conditions of bail," and that Weachter failed to demonstrate "by a preponderance of the evidence that full or partial remission [was] required by the interests of justice." Remand Opinion, at 17. Because we detect no abuse of discretion on the part of the trial court, we affirm the order granting the Commonwealth's petition for forfeiture.[10]

Order affirmed.

*(Footnote Continued)* ———————————

substantial forfeiture is warranted by the facts of this case[;]" (6) "the bail condition violated was extremely serious, as [the victim] lost her life and the Commonwealth lost the ability to prosecute Hann for his alleged crimes[;]" (7) because the breach was serious, forfeiture of the bond will vindicate the public interest in the "orderly, effective administration of justice[;]" (8) the bail amount set by the court was not excessive, and Hann's actions may have justified an even higher bail amount; and (9) while the Commonwealth did not suffer a monetary loss as a result of Hann's actions, "the ultimate 'costs' to Fulton County are an inability to prosecute Hann for his alleged criminal activity and the loss of Souder's life, costs which cannot be quantitatively measured." Remand Opinion, at 10-17.

[10] We note that the trial court, in its Rule 1925 Opinion, asked this Court for guidance and direction if we determined that a partial remission of the $100,000 bail bond was warranted. *See* Rule 1925 Opinion, at 10 n.5. However, because Weachter did not provide any argument to justify a **partial remission** of the bail bond, or any proposed calculation method, we need not address this issue further at this time.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 3/4/2015