J-A06035-15, J-A06036-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUSTIN LAMAR CULVER AND SENECA INSURANCE COMPANY | |
| APPEAL OF: SENECA INSURANCE COMPANY | |
| Appellant | No. 1765 EDA 2014 |

Appeal from the Order May 21, 2014
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000062-2007

_____

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JUSTIN LAMAR CULVER AND EVERGREEN NATIONAL INDEMNITY COMPANY | |
| APPEAL OF: EVERGREEN NATIONAL INDEMNITY COMPANY | |
| Appellant | No. 1766 EDA 2014 |

Appeal from the Order May 21, 2014
In the Court of Common Pleas of Pike County
Criminal Division at No(s): CP-52-CR-0000119-2007

BEFORE:  PANELLA, J., OTT, J., and JENKINS, J.

MEMORANDUM BY JENKINS, J.:                    **FILED APRIL 13, 2015**

Appellants Seneca Insurance Company ("Seneca") and Evergreen National Indemnity Company ("Evergreen") appeal from the order of the Pike County Court of Common Pleas denying their petitions to vacate forfeiture of bail and exonerate surety. After careful review, we affirm.

The facts and procedural posture underlying this matter are as follows. On February 2, 2007, police charged Justin Culver ("Culver") with one count each of burglary, criminal trespass, criminal mischief, and attempt to commit theft by unlawful taking.[1] On February 9, 2007, Seneca posted Culver's $25,000.00 bail. The Magisterial District Court bound the charges over to the Court of Common Pleas at Docket No. CP-52-CR-0000062-2007.

Thereafter, on March 26, 2007, police charged Culver in a new criminal complaint with false imprisonment, terroristic threats, simple assault, and harassment.[2] The Magisterial District Judge set Culver's bail in this second case at $100,000.00, and bound the matter over to the Court of Common Pleas at Docket No. CP-52-CR-0000119-2007. On June 14, 2007, Evergreen posted Culver's $100,000.00 bail at Docket No. CP-52-CR-0000119-2007. Culver was released from custody but remained subject to the bail conditions set at each docket number.

---

[1] 18 Pa.C.S. §§ 5502(a), 3304(a)(5), 3503(a)(1)(ii), and 901(a), respectively.

[2] 18 Pa.C.S. §§ 2903(a), 2706(a)(1), 2701(a)(1), and 2709(a)(1), respectively.

On September 10, 2007, police arrested and charged Culver with second-degree murder, two counts of robbery, burglary, conspiracy to commit robbery, conspiracy to commit burglary, firearms not to be carried without a license, and possession of firearm prohibited, stemming from a home invasion perpetrated on August 24, 2007.[3] The Magisterial District Court bound these charges over to the Court of Common Pleas at Docket No. CR-0000298-2007. On September 11, 2007, upon oral motion of the Commonwealth, the trial court revoked Culver's bail at Docket Nos. CP-52-CR-0000062-2007 and CR-0000119-2007.

On March 18, 2009, a jury convicted Culver of second-degree murder, conspiracy, and the other charges at Docket No. CP-52-CR-0000298-2007.[4] On March 19, 2009, the trial court granted a Commonwealth motion for forfeiture of Culver's bail at Docket Nos. CP-52-CR-0000062-2007 and CP-52-CR-0000119-2007.

On November 12, 2009, a jury convicted Culver of all the charges at Docket No. CP-52-CR-0000062-2007, Seneca's matter.[5] On November 16,

---

[3] 18 Pa.C.S. §§ 2502(b), 3701, 3502(a), 903, 903, 6106(a)(1), and 6105(a)(1), respectively.

[4] In addition to the sentences imposed for the other convictions at Docket No. CP-52-CR-0000298-2007, Culver received a life sentence for the second-degree murder conviction.

[5] The trial court eventually sentenced Culver to an aggregate sentence of 3 to 10 years' incarceration for his convictions at Docket No. CP-52-CR-0000062-2007.

2009, the Commonwealth *nolle prossed* the charges at Docket No. CP-52-CR-0000119-2007, Evergreen's matter.

Both Evergreen and Seneca filed petitions to vacate forfeiture of bail and exonerate surety, which the trial court denied on October 21, 2010. Evergreen and Seneca filed notices of appeal on November 3, 2010, and November 5, 2010, respectively. A panel of this Court reviewed both appeals and determined that the trial court had abused its discretion and misinterpreted the law by refusing to set aside the forfeitures and to release the sureties. The Commonwealth filed an application for reargument with this Court, which we granted. The cases were then consolidated for reargument before this Court *en banc*.

On *en banc* review, this Court determined that the trial court had misapplied the **Ciotti**[6]/**Mayfield**[7] test for bail forfeitures,[8] and reversed the trial court. The Commonwealth filed a petition for allowance of appeal to our Supreme Court.

---

[6] **United States v. Ciotti**, 579 F.Supp. 276 (W.D.Pa.1984).

[7] **Commonwealth v. Mayfield**, 827 A.2d 462 (Pa.Super.2003).

[8] At the time of the *en banc* hearing, Pennsylvania courts followed the **Ciotti**/**Mayfield** test. This test required that courts consider three factors in forfeiture actions: (1) the willfulness of the defendant's breach of the bond, (2) the cost, inconvenience and prejudice suffered by the government, and (3) any explanation or mitigating factors. **Mayfield**, 827 A.2d at 468.

On October 30, 2013, during the pendency of the Commonwealth's petition for allowance of appeal, the Supreme Court of Pennsylvania decided *Commonwealth v. Hann*, 81 A.3d 57 (Pa.2013), which abandoned the *Ciotti*/*Mayfield* test in favor of a new set of factors courts should consider to determine whether justice requires the enforcement of a forfeiture order under Pa.R.Crim.P. 536(A)(2)(d). On December 19, 2013, the Supreme Court granted the Commonwealth's petition for allowance of appeal, vacated this Court's *en banc* decision, and remanded the matter to the Pike County Court of Common Pleas for a new forfeiture hearing in accordance with *Hann*. *See Commonwealth v. Culver*, 82 A.3d 429 (Pa.2013).

The trial court conducted the new forfeiture hearing on April 24, 2014, and denied Evergreen's and Seneca's petitions to vacate and exonerate on May 21, 2014. Seneca filed a notice of appeal on June 12, 2014. Evergreen filed a notice of appeal on June 18, 2014. Seneca, Evergreen, and the trial court complied with Pa.R.A.P. 1925. This Court consolidated the matters per Pa.R.A.P. 513.

Seneca raises the following two claims for review:

I. Whether Seneca was discharged when Culver was arrested for a new crime and admitted to increased bail without notice to Seneca and without Seneca's consent?

II. Whether the [t]rial [c]ourt abused its discretion in failing to remit the bail forfeiture previously ordered in light of the mitigating factors presented by Seneca at the hearing held on Seneca's petition to remit bail failure?

Seneca's Brief, p. 4.

Evergreen raises the following claim for review:

I. Whether the [t]rial [c]ourt abused its discretion in failing to remit the bail forfeiture previously ordered in light of the mitigating factors presented by Evergreen [] at the hearing held on Evergreen's petition to remit bail failure?

Evergreen's Brief, p. 4.

This Court's standard of review in cases involving remittance of bail forfeiture is well-established:

The decision to allow or deny a remittance of bail forfeiture lies within the sound discretion of the trial court. Accordingly, an appellate court's review is limited to a determination of whether the court abused its discretion in refusing to vacate the underlying forfeiture order. To establish such an abuse, the aggrieved party must show that the court misapplied the law, exercised manifestly unreasonable judgment, or acted on the basis of bias, partiality, or ill-will to that party's detriment. If a trial court erred in its application of the law, an appellate court will correct the error. The scope of review on questions of law is plenary.

*Commonwealth v. Gaines*, 74 A.3d 1047, 1050 (Pa.Super.2013), *reargument denied* (Oct. 1, 2013), *appeal denied*, 89 A.3d 1283 (Pa.2014).

Both Seneca and Evergreen claim that the trial court abused its discretion by not remitting their sureties. *See* Seneca's Brief, pp. 11-13; Evergreen's Brief, pp. 9-14. These claims lack merit.

Regarding forfeiture of a bail bond, this Court has explained:

Upon a defendant's violation of any bail condition, under Pennsylvania law[,] the bail may be subject to forfeiture. Pa.R.Crim.P. 536. After forfeiture, the money deposited to secure the defendant's appearance or compliance with the conditions of the bail bond technically becomes the property of the county. Pa.R.Crim.P. 536(A)(2)(e). However, the bail bond

- 6 -

remains subject to exoneration, set-aside, or remittance by the court. *See* Pa.R.Crim.P. 536(C). A forfeiture, once declared by the court, may be set aside or remitted as justice requires. Pa.R.Crim.P. 536(A)(2)(d). Equitable principles apply when a court is faced with the decision whether to modify or remit a forfeiture.

*Gaines*, 74 A.3d at 1050-51 (some citations omitted).

In *Hann*, *supra*, the Supreme Court of Pennsylvania discarded the *Ciotti*/*Mayfield* test. The Court instead stated that, when considering whether justice requires the enforcement of a forfeiture order under Pa.R.Crim.P. 536(A)(2)(d), a court should consider several factors, including the following:

(1) whether the applicant is a commercial bondsman; (2) the extent of the bondsman's supervision of the defendant; (3) whether the defendant's breach of the recognizance of bail conditions was willful; (4) any explanation or mitigating factors presented by the defendant; (5) the deterrence value of forfeiture; (6) the seriousness of the condition violated; (7) whether forfeiture will vindicate the injury to public interest suffered as a result of the breach; (8) the appropriateness of the amount of the recognizance of bail; and (9) the cost, inconvenience, prejudice or potential prejudice suffered by the State as a result of the breach.

*Hann*, 81 A.3d at 67-68. The Supreme Court explained, however, that the "list is not exhaustive, and trial courts may consider other factors as interests of justice require." *Id.* at 68. Further, *Hann* does not require trial courts to discuss each of the enumerated factors in detail; the enumerated factors are only some potentially relevant considerations. *See id.* at 67 (emphasizing that "forfeiture decisions should be based upon an examination

of the totality of the circumstances presented in the individual case, and no one point or factor should be talismanic in making that determination").

At a forfeiture hearing, the Commonwealth maintains the initial burden to prove, by a preponderance of the evidence, (1) that a defendant breached a condition of a bail bond,[9] and (2) that a surety had agreed to be bound by the bail bond. *Hann*, 81 A.3d at 71-72. Once the Commonwealth proves the above, the burden shifts to the defendant or the surety to prove, also by a preponderance of the evidence, that the forfeiture is not warranted. *Id.*

---

[9] In addition to the possible imposition of further monetary and non-monetary conditions pursuant to Pa.R.Crim.P. 527 & 528, all Pennsylvania criminal bail bonds require the released defendant to:

> (1) appear at all times required until full and final disposition of the case;
>
> (2) obey all further orders of the bail authority;
>
> (3) give written notice to the bail authority, the clerk of courts, the district attorney, and the court bail agency or other designated court bail officer, of any change of address within 48 hours of the date of the change;
>
> (4) neither do, nor cause to be done, nor permit to be done on his or her behalf, any act proscribed by Section 4952 of the Crimes Code (relating to intimidation of witnesses or victims) or by Section 4953 (relating to retaliation against witnesses or victims), 18 Pa.C.S. §§ 4952, 4953; and
>
> (5) **refrain from criminal activity**.

Pa.R.Crim.P. 526(A) (emphasis provided).

Initially, we note that Seneca and Evergreen framed their claims in terms of alleged "mitigating factors"[10] they claim to have presented at the April 24, 2014 forfeiture hearing. *See* Seneca's Brief, Statement of Questions Involved, p. 4; Evergreen's Brief, Statement of Question Involved, p. 4. However, as this Court recently explained, "[w]hen read in context, it

---

[10] Seneca claims the following as "mitigating factors":

- No notice to Seneca when Culver was arrested in [Evergreen's case] and Culver was permitted to post bond in the amount of $100,000.00 (four times the bond amount in Seneca's case to reflect the risk Culver would not respect the conditions of his new bail [)];

- No costs incurred in the apprehension of Culver for the *second* offense [(Evergreen case)];

- No notice to Seneca after Culver was arrested in the [Evergreen case] although he was on release per Seneca's bail in the Burglary Case;

- No costs incurred in the apprehension of Culver for the *third* offense (Homicide Case);

- Lion's share of the cost incurred in the Homicide Case was for the stranger to the bail bond, namely [co-defendant] Maurice Keeys;

- Most of the Keeys' costs in the Homicide Case were not costs of prosecution but defense costs required for indigent defense of capital cases; and

- Culver was not a fugitive when he committed new crimes.

Seneca's Brief, pp. 12-13. Likewise, as its "mitigating factors", Evergreen argued that a bondsman is not a guarantor against criminal conduct, forwarded a questionable deterrence argument, and noted that the Commonwealth ultimately **nolle prossed** the Evergreen charges. **See** Evergreen's Brief, pp. 11-14.

is evident that the 'mitigating factors' [discussed in **Hann**] refer to any explanation for the defendant's conduct in violating the terms of his bail bond, *i.e.*, the defendant failed to appear for a court date because he was caring for his sick child." **In re Hann**, --- A.3d ---, 2015 WL 904622 *5 (Pa.Super. March 4, 2015). Seneca and Evergreen's alleged "mitigating factors" miss the point. Seneca and Evergreen did not present "mitigating factors" as contemplated by **Hann**, meaning explanations of Culver's conduct in violating the terms of his bail bonds. Instead, they presented their argument on the **Hann** factors as "mitigating factors" to explain their conduct, *i.e.*, the conduct of the surety and why the results only minimally prejudiced the Commonwealth.

In its order denying Seneca and Evergreen's petitions, the trial court explained how it weighed the **Hann** factors as follows:

> Clearly, the commission of the crimes of [m]urder, [r]obbery, [b]urglary, etc., violate the terms of the [d]efendant's bail which require [d]efendant to obey the law while released on bail. Therefore, the Commonwealth has met its burden of demonstrating the breach of the [d]efendant's bail conditions. The burden of proof thus shifts to the Sureties to present evidence justifying full or partial remission of the forfeiture.
>
> Based upon all the evidence presented it is clear that each Surety is a commercial bondsman. As a commercial bondsman each Surety is in the profit making business of providing bail to defendants, overseeing their activity while out on bail and trying to insure their compliance with the bail orders.
>
> Further, based upon the evidence presented, there was little indication of supervision of the [d]efendant other than the representative from the Surety indicat[ing] that they had telephone contact with the [d]efendant. There was no indication of any rules of bail imposed by the Surety to require [d]efendant

- 10 -

to report any arrest to them and no indication of any meeting with the [d]efendant or any research done by the Surety to insure compliance.

Certainly, the breach of the bail conditions was clearly willful since it involved a voluntary burglary of a home and the murder of the homeowner who attempted to defend his home and daughter.

No evidence of any mitigating factor of any type was presented by the Defendant or Surety.

Certainly, there is a deterrence value of forfeiture under these circumstances. Defendant was arrested for serious charges just one and one half months after Seneca posted the bail in this case. No effort was made by Seneca to investigate any actions of the [d]efendant nor to require the [d]efendant to meet with and report such arrests or other criminal activity. Five months later the [d]efendant participated in the robbery/burglary offence that resulted in the murder of an innocent party. Since bail by Seneca was $25,000 for the original felony charges of [b]urglary, etc., clearly the Commonwealth recognized the serious risk posed by the [d]efendant. However, the evidence presented at the hearing clearly indicates that neither Surety undertook any significant effort to oversee or supervise the [d]efendant while on bail. The deterrence value of forfeiture under such circumstances remains high.

Certainly[,] the seriousness of the violation could not be higher since the last violation involved murder, robbery and burglary.

Further, the amount of bail set in these matters was clearly appropriate. In the first felonies, bail was set at $25,000. Given the serious nature of the offenses, the age and actions of the [d]efendant, the bail posted by Seneca was clearly justified. In addition, the second set of charges filed just shortly after the first set certainly required an increase in the bail. Therefore, $100,000 was justified given the [d]efendant's actions. Certainly, the Sureties were aware of the amount of bail and should have been aware of the [d]efendant's past and current actions and they chose to issue that bail.

Forfeiture will make a small step to vindicate the injury to the public interest suffered in this matter. While nothing can

alleviate the injury created by this murder, full forfeiture is the only way for the [c]ourt to vindicate the public interest and to attempt to insure that Sureties shall oversee and attempt to control the actions of defendants out on bail.

The Commonwealth has presented certain evidence of the costs related to the [d]efendant's breach of conditions. These costs included the cost of the trial for murder, the costs associated with the defense of a codefendant of the [defendant], [and] the time and effort involved in such a prosecution. While these costs are not directly attributable just to the [defendant], they are certainly related to his actions. These actual monetary costs exceed the amount of bail forfeited in this matter. These costs do not address the loss of life and the extensive effort these trials required.

Trial Court Order, May 21, 2014, pp. 4-6. Ultimately, the trial court concluded:

Based upon all the evidence presented and the factors for this [c]ourt to consider, the [c]ourt finds that Suret[ies] Seneca and Evergreen have failed to prove any factor set forth in [*Hann*]. Certainly, the evidence presented is nowhere near the preponderance of evidence required by applicable law.

*Id.* at 6.

A review of the forfeiture hearing transcript reveals that the trial court did not abuse its discretion in denying the petitions. *See* N.T. 4/24/2014, Seneca R.R. 24-51, Evergreen R.R. 47-74. The transcript supports the trial court's conclusions as to the *Hann* factors. At the forfeiture hearing, Seneca and Evergreen's bail bondsmen testified that the sureties paid the bail bond and then performed very little monitoring of Culver. In short, the evidence revealed that, in pursuit of profit, Seneca and Evergreen took calculated business risks; they gambled on Culver's compliance with his bail

conditions[11] and lost. We find no abuse of discretion in the trial court's denial of Seneca's and Evergreen's petitions to remit the bail forfeiture.[12]

In its second claim, Seneca argues that because "the Commonwealth decided not to seek forfeiture and to waive the violation of Seneca's bail bond upon Culver's new arrest, Seneca was denied the opportunity to surrender Culver and/or revoke its bond. Consequently, Seneca was discharged as a matter of law." *See* Seneca's Brief, p. 7. This claim also lacks merit.

Initially, any onus to supervise a bailed defendant is on the surety who stands to profit from the bail bond it provides, not the Commonwealth or the trial court. *See Hann*, 81 A.3d at 69-70 (citing *Rochelle Bail Agency, Inc. v. Maryland Nat. Ins. Co.*, 484 F.2d 877, 878-79 (7th Cir. 1973) to note that, while a surety does not indemnify an absolute guarantee of a defendant's compliance with bail bond conditions, he may have a duty to exercise some minimal supervision over the defendant to accomplish compliance). Additionally, Seneca cites no authority to support its suggestion that the Commonwealth must notify sureties of the arrest of their

---

[11] Specifically, that he refrain from criminal activity. *See* Pa.R.Crim.P. 526(A)(5).

[12] That the Commonwealth ultimately *nolle prossed* the charges for which Evergreen had provided its surety is of no moment. The Commonwealth's decision to *nolle prosse* the charges does not retroactively cure Culver's violation of the terms and conditions of his bail for which Evergreen provided the surety.

own bailees, and this Court is unaware of any statute or jurisprudence requiring the trial court or the Commonwealth to monitor a surety's bailee on its behalf.

Seneca had no excuse for not knowing about the arrest of its own bailee. Upon Culver's second arrest, Seneca could have filed a petition to vacate its bond. It did not. Further, once police arrested Culver for the second offense, it was too late – Culver had already violated the terms of the bail for which Seneca had provided the surety. Because it did not file a petition to vacate at the time of the second arrest, Seneca was still responsible for its bail bond in the first case when the court released Culver upon the posting of a higher bond by Evergreen in the second case, with or without knowledge of such arrest and/or bail posting.

Seneca's argument cites only cases that require notice to a surety where there has been a material modification in the terms of its bond. ***See*** Seneca's Brief, pp. 8-10. These fact patterns are readily distinguishable. The $100,000.00 bond Evergreen provided following Culver's subsequent arrest was not an alteration of the first bond provided by Seneca. Evergreen's bond was instead a completely separate bond on a different case. As such, Culver's arrest on new charges, and Evergreen's subsequent bond on those charges, did not discharge Seneca's original $25,000.00 bond.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>4/13/2015</u>