J-S04045-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ANATOLIY A. VENSKYY | : | |
| | : | |
| | : | No. 581 MDA 2018 |
| APPEAL OF: THEODORA | : | |
| COSTOPOLOUS | : | |

Appeal from the Order Entered March 7, 2018
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002780-2015

BEFORE:   SHOGAN, J., OTT, J., and STEVENS*, P.J.E.

MEMORANDUM BY STEVENS, P.J.E.:                    **FILED APRIL 23, 2019**

Appellant, Theodora Costopolous, a professional and licensed bail bondsman, appeals from the order entered in the Court of Common Pleas of Cumberland County denying her Petition to Strike or Set Aside Bail Forfeiture, pursuant to Pa.R.Crim.P. 536(A)(2)(a).[1]  We affirm.

The court below sets forth the pertinent facts and procedural history, as follows:

> In 2015, the Defendant, Anatoliy Venskyy, a Ukranian national, was charged with numerous sex offenses committed against his two daughters.  After his arrest, cash bail was set at $100,000.

---

[1] The Rule provides, in relevant part, that "[w]hen a monetary condition of release has been imposed and the defendant has violated a condition of the bail bond, the bail authority may order the cash or other security forfeited[.]" Pa.R.Crim.P. 536(A)(2)(a).

---

* Former Justice specially assigned to the Superior Court.

The Appellant posted bond for the Defendant based upon sureties given by members of the Defendant's family in the form of income and real property. She also confiscated the Defendant's Ukrainian passport as a precautionary measure to prevent his flight from the United States.

At the initial trial, the Commonwealth proceeded on nine separate charges, with a total of 15 counts. After lengthy deliberations, the jury was unable to reach a verdict on a single count and a mistrial was declared on May 19, 2016. Due to the Commonwealth's desire to retry the Defendant, he remained out of jail on the existing bond posted by the Appellant.

The Commonwealth pared down the number of counts and proceeded to [a second] trial on September 19, 2016. This trial culminated on September 21, 2016, with guilty verdicts on nine of ten counts: one count of aggravated indecent assault of a child, two counts of indecent assault, four counts of corruption of minors (two misdemeanor and two felony), and two counts of indecent assault. The Defendant was found not guilty of rape of a child.

In response to the Commonwealth's request for an increase in or the outright denial of Defendant's bail, [the trial court] included the following in [its] Verdict Order:

> The Defendant shall post an additional $200,000.00 in bail no later than the close of business on Monday, September 26, 2016. Failing to do so, he shall report directly to the Cumberland County Prison. We further direct that as an ongoing condition of his bail that his passport be turned over to the Clerk of Courts.

Order of Court, dated September 21, 2016.

In deciding to substantially raise rather than deny bail, [the trial court] considered several factors. The seriousness of the prison sentence the Defendant was likely to face was significant, as was the potential flight risk. However, [the trial court] also considered the Defendant's appearance at all previous court proceedings and the fact that his family already had significant assets at stake. Notably, the Defendant was willing to return to face a second jury trial after his first had resulted in a mistrial. For these reasons [the trial court] allowed the Defendant to remain at liberty on

- 2 -

existing bail for five days to give him an opportunity to raise additional funds to post the prospective increased bail amount.

Unfortunately, the Defendant absconded, apparently to his home country, the Ukraine. Based on his failure to abide by [the trial] court's order of September 21, 2016, [the trial court] entered an order revoking his bail and issuing a bench warrant for his arrest on September 27, 2016.

Appellant filed a Petition to Set Aside or Strike Bail Forfeiture, arguing that it was inappropriate for [the trial] court to increase the amount of bail but then also release the Defendant from custody without being required to provide the full amount of security for his release. [At the hearing on Appellant's Petition,] Appellant argue[d] that [by] unilaterally requir[ing her] to guarantee an extra $200,000 [bail amount] without notice or consent, the court created an additional incentive for the Defendant to flee, [such that she] should be exonerated from forfeiting even the original $100,000 bond.

Trial Court Opinion, 7/18/18, at 12.

On the question of notice and consent, Appellant testified that Jaime Keating from the District Attorney's Office contacted her on September 21, 2016, immediately after Defendant's bail modification hearing, to ask her if she still possessed Defendant's passport. N.T. 3/5/18 at 14, 19. Appellant, who was on a two-week vacation in Rome, Italy at the time, replied that Defendant's passport was in her possession. *Id*. Appellant, however, denied that Keating advised her during the phone call about the modification to Defendant's bail conditions. *Id*.

Appellant maintained that she did not discover the bail forfeiture until she returned home from Rome on October 3, 2016. In response, she filed the liens on properties belonging to Defendant's parents and called the parents to

explain their obligations under their agreement. *Id.* at 15. Defendant's family denied knowing his whereabouts.

Appellant testified that she also contacted the Sheriff's Office and the United States Marshals, asking what she could to assist locating the Defendant, but they advised against any action on her part, as they were tracking him. *Id.* at 17. Eventually, Appellant claimed, she learned the Defendant had apparently attended a family wedding in Baltimore, accompanied the newlyweds as they drove to Mexico for their honeymoon, and flew out of Mexico to the Ukraine. *Id.* at 17.

For its part, the Commonwealth responded that Appellant had failed to assert, let alone prove, that either she or her agency had taken any action to track the Defendant during the post-verdict phase of proceedings. *Id.* at 6. Testifying on behalf of the Commonwealth in this regard was Cumberland County Assistant District Attorney Erin Bloxham.

According to ADA Bloxham, she contacted Jamie Keating immediately after the September 21, 2016, Verdict Order to express her concerns regarding the Defendant's risk of flight. *Id*. at 26. She directed Keating to contact Appellant that day "to let her know what the change in circumstance was and why we were looking for the Defendant's passport. So that communication went from myself to Mr. Keating, directly to [Appellant], as she testified, the day [the bail modification hearing] occurred." *Id*.

Furthermore, ADA Bloxham contacted Appellant again on either September 26 or 27, 2016, and informed her that Defendant had failed to post

bail and turn himself in pursuant to the Verdict Order.  *Id.* at 23-24.  According to Bloxham, Appellant advised her that she could do nothing because she was not in the country.  *Id.* at 24.

The court entertained oral argument, where counsel for Appellant conceded that the $100,000 bail would be forfeit under the circumstances had the court not increased the bail amount.  *Id.* at 29-30.  The court's failure to give Appellant notice and the opportunity to be heard regarding "the shifted risk" of flight created by the bail modification, however, should insulate her from the sanction of bond forfeiture, counsel maintained.  *Id.* at 30-34.

The court replied that, at the very least, Appellant had notice of the Defendant's trial, which itself entailed a "shifted risk" of flight in the event of a guilty verdict and continued release on bail pending sentencing.  Yet, Appellant did not arrange for a representative to attend the trial and any post-verdict bail/release decision that would necessarily follow, the court observed. *Id*. at 33-34.

Moreover, the court credited the Commonwealth's testimony that it had informed Appellant of the modification to Defendant's bail on the day of the Verdict Order.  Notwithstanding Appellant's receipt of this information, the court observed, she neither sought to ascertain the Defendant's whereabouts nor petitioned the court to release her from surety duties at any time during the ensuing two weeks until she returned to the States.  *Id*. at 34.

In reviewing this matter, the court indicated it would take judicial notice of **Commonwealth v. Hann**, 81 A.3d 57 (Pa. 2013), which requires a trial

court to weigh multiple factors in deciding whether to order the forfeiture of bail. N.T. at 32-35. It subsequently entered its order of March 7, 2018, which rejected Appellant's blame-sharing argument and, therefore, denied Appellant's petition for remission of bail forfeiture. Citing **Hann** as governing authority in its Order, the court found "that [Appellant's] or her representative's failure to be present at the time of Defendant's conviction by a jury and corresponding *pro forma* bail review was not a denial of due process by the court but rather a failure of due diligence on the part of [Appellant]." Order, 3/7/18, at n.1. This timely appeal follows.

Appellant presents the following question for our consideration:

> Does the trial court commit an error of law when it releases a criminal defendant from custody without requiring that criminal defendant to satisfy conditions of release on bail imposed by the trial court in a bail determination and the failure of the trial court to require the defendant [to] satisfy the terms of those conditions precedent to release ultimately contributes to a bail forfeiture?

Appellant's brief, at 2.

Our well-established standard of review in bail forfeiture appeals is as follows:

> "[T]he decision to allow or deny a remission of bail forfeiture lies with the sound discretion of the trial court." **Commonwealth v. Chopak**, 532 Pa. 227, 615 A.2d 696, 701 (1992). Trial courts unquestionably have the authority to order the forfeiture of bail upon the breach or violation of any condition of the bail bond. **Id.** at 701–02. In bond forfeiture cases, an abuse of that discretion or authority will only be found if the aggrieved party demonstrates that the trial court misapplied the law, exercised its judgment in a manifestly unreasonable

manner, or acted on the basis of bias, partiality, or ill-will. [*Commonwealth v.*] *Culver*, 46 A.3d [786,] 790 [(Pa.Super.2012)]. To the extent the aggrieved party alleges an error of law, this Court will correct that error, and our scope of review in doing so is plenary. *Id.*

*Hann*, *supra*, 81 A.3d at 65.

*In re Hann*, 111 A.3d 757, 760 (Pa.Super. 2015).

Pennsylvania Rule of Criminal Procedure 536 provides two sanctions when a defendant violates a condition of his bail—revocation of the defendant's release or forfeiture of the posted bail bond. Pa.R.Crim.P. 536(A)(1)-(2). Here, there is no dispute that Defendant violated the conditions of his bail. Moreover, because Defendant has absconded—apparently to some undetermined part of the Ukraine—the revocation of his release is not an available sanction.

Therefore, the Commonwealth confined its Rule 536(A) petition to requesting forfeiture of the $100,000 bail bond Appellant posted upon the Defendant's pre-trial release. The Rule, however, also provides "[t]he bail authority may direct that a forfeiture be set aside or remitted **if justice does not require** the full enforcement of the forfeiture order." Pa.R.Crim.P. 536(A)(2)(d) (emphasis supplied). *See Id.*, at 760-61.

With the aim of guiding the Rule 536(A)(2)(d) determination, we have observed:

Our Supreme Court has adopted the following multi-factor test "for determining whether justice required full enforcement of a forfeiture order":

(1) whether the applicant is a commercial bondsman; (2) the extent of the bondsman's supervision of the defendant; (3) whether the defendant's breach of the recognizance of bail conditions was willful; (4) any explanation or mitigating factors presented by the defendant; (5) the deterrence value of forfeiture; (6) the seriousness of the condition violated; (7) whether forfeiture will vindicate the injury to public interest suffered as a result of the breach; (8) the appropriateness of the amount of the recognizance of bail; and (9) the cost, inconvenience, prejudice or potential prejudice suffered by the State as a result of the breach.

*Hann*, *supra*, 81 A.3d at 67-68. The Court noted the "list is not exhaustive, and trial courts may consider other factors as interests of justice require." *Id.* at 68.

As this was the Supreme Court's first decision interpreting Rule 536, the *Hann* Court also provided guidance concerning the burden of proof in forfeiture cases. The Court stated:

[I]n a case where the Commonwealth has sought forfeiture, and the defendant or his surety opposes it, a hearing should be held. At that hearing, the Commonwealth has the burden of proving the conditions to bail forfeiture as aforesaid, upon which the burden will shift to the defendant or his surety to justify full or partial remission of bail forfeiture.

*Id.* at 71–72. Because a forfeiture proceeding is collateral to a criminal prosecution and civil in nature, the Court further determined the proper burden should be by a preponderance of the evidence standard. *Id.* at 72.

*In re Hann*, 111 A.3d at 761–62.

In the present appeal, Appellant contends the trial court misapplied the law and abused its discretion when it issued a Verdict Order permitting the release of Defendant prior to his compliance with the new bail conditions that increased his risk of flight. Our precedential decision in *In re Hann*, however,

rejected as irrelevant to the Rule 536 analysis the very kind of blame-sharing contention Appellant puts forth here:

> The trial court, however, concluded that "neither the Supreme Court in **Hann** nor Pa.R.Crim.P. 536 permit the blame-sharing result Weachter [the bondsman] seeks." Rule 1925 Opinion at 6. We agree.
>
> It is clear the focus of the multi-factor test outlined in **Hann** is on the **actions of the defendant and the surety.** Although [the bondsman] suggests the **inaction** of the police, the district attorney and the magisterial district justice, are relevant mitigating factors under the facts of this case, we disagree. Indeed, the Supreme Court explained in **Hann**:
>
>> Instantly, there is little dispute that Hann's breach of his bail bond conditions was willful, and that there can be no explanation of mitigating factors presented by a representative of Hann or [the bondsman]; thus, the evidence in this case clearly weighs in favor of forfeiture. Indeed, for purposes of the whole of Pennsylvania law, these two factors need not be extensively examined, as any evidence of willful misconduct or mitigation by either a defendant or his surety, and whether that evidence militates in favor of or against forfeiture, should be self-explanatory.
>
> **Hann**, **supra**, 81 A.3d at 68.
>
> . . .
>
> There is no support for [the bondsman's] claim that the Commonwealth's failure to file additional charges against a defendant, or the court's failure to impose a higher bail, mitigates a surety's duty to fully investigate a defendant's background before issuing a bail bond.
>
> Moreover, the **Hann** Court emphasized the financial aspects of a commercial surety's relationship with a defendant:
>
>> Courts have uniformly held that a surety's status as a bondsman tends to lean in favor of forfeiture. "The

> driving force behind a surety's provision of a bond is the profit motive." **In making the business decision of whether to take a bail bond, "it is not unreasonable to conclude that [a bondsman] should have been fully cognizant of his responsibilities and the consequences of [a defendant's] breach of the conditions of the bond."** Indeed, such calculation involves "a known business risk ... for economic gain-the premium paid for the bond."
>
> *Id*. at 69 (citations omitted and emphasis supplied). Weachter [the bondsman], as a commercial surety, took a calculated business risk when he agreed to post bail for Hann, who was charged with kidnapping his ex-girlfriend and threatening her at gunpoint. *See* Criminal Complaint, 2/18/2011, at 4. Accordingly, the fact that the state trooper did not file additional charges against Hann, and that the magisterial district justice declined to set bail at $500,000 as requested by the trooper, is not relevant to the question of whether the trial court should have ordered the forfeiture of the $100,000 bond that was posted.

*In re Hann*, 111 A.3d at 762-63.

When viewed in light of the above reasoning, the record reveals no mitigating factors weighing in Appellant's favor, for she is a commercial surety who took the $100,000 bail bond with the understanding that Defendant could suffer a guilty verdict but remain released on bail pending sentencing, given his strong ties in the community. In this vein, we reject the argument that the Verdict Order's increase of the monetary condition of bail heightened Defendant's risk of flight by any degree bearing upon the Rule 536 inquiry. If anything, it was Defendant's new status as a convicted criminal awaiting a sentence of incarceration that increased the risk of flight, which the court reasonably sought to offset by substantially increasing the bail amount. To a

commercial surety, such a status change is surely within the scope of foreseeable events requiring a supervisory response.

As such, Appellant should have been fully cognizant of both her continued responsibilities of oversight and the consequences of any breach of the bail bond during the post-verdict/pre-sentencing phase. Therefore, we conclude the court's decision to release Defendant on modified bail pending sentencing did not mitigate Appellant's continued duty to supervise Defendant.

Holding Appellant responsible for Defendant's bail bond breach in this way is consistent with precedent affirming forfeiture orders where a commercial surety makes no attempt to contact a defendant upon his release. *See Id.* at 764 (finding no abuse of discretion where trial court based forfeiture in large part on surety's lack of attempt to contact defendant after release). Here, the record supports the trial court's finding of fact that Appellant first learned of Defendant's post-verdict release within hours of the Verdict Order, and yet she did not attempt to establish contact with Defendant during the ensuing twelve days. Nor did Appellant alert the court that she wished to withdraw as a surety given the change in circumstances. Therefore, in conducting its Rule 536 analysis, the court properly viewed Appellant's failure to monitor Defendant as a factor favoring forfeiture.

Finally, it is apparent that the trial court reviewed the present matter in light of the *Hann* factors before concluding that forfeiture was warranted. Specifically, the court plainly considered: Appellant is a licensed, commercial

surety who made a business decision to bond Defendant; she made no attempt to monitor Defendant's trial and post-verdict/pre-sentence release status; despite receiving updates on September 21 and 27, respectively, regarding the Commonwealth's concerns over Defendant's potential for flight, Appellant waited until October 3 to contact him; Defendant's actions in violating the terms of his bond were willful; there was no evidence of mitigation offered by Appellant; and the bail condition violated is extremely serious, as the opportunity to incarcerate the Defendant for his serious offense is now jeopardized.

For the foregoing reasons, we discern no abuse of discretion in the court's Order denying Appellant's petition, as Appellant failed to meet her burden of proving by a preponderance of the evidence that justice demands setting aside bail forfeiture. In addition, the record reflects the court's appropriate consideration of relevant factors consistent with *Hann* and its progeny.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/23/2019

- 12 -